James W. **SANDERSON**,
Petitioner,

v.

The Honorable Fred M. **WINNER**, United States District Judge for the District of Colorado, Respondent.

No. 74–1477.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 14, 1974.

Decided Nov. 26, 1974.

Certiorari Denied April 14, 1975.
See 95 S.Ct. 1573.

Granvil I. Specks, Specks & Goldberg, Ltd., Chicago, Ill. (Richard M. Kranzler, Brenman, Sobol & Baum, Denver, Colo., on the brief), for petitioner.

Patrick M. Westfeldt, Holland & Hart, Denver, Colo., H. L. Arkin, Arkin & Hanlon, R. Brooke Jackson, of Holland & Hart, Denver, Colo., and David Brice

Toy and Pamela Ann Rymer, Lillick, McHose, Wheat, Adams & Charles, Los Angeles, Cal., on the brief), for respondent.

Before SETH, HOLLOWAY and DOYLE, Circuit Judges.

PER CURIAM.

Plaintiffs seek the issuance of writs of mandamus and prohibition which would direct the district court to vacate certain discovery orders entered June 25, 1974 and prohibit the court from issuing future discovery orders which would invade the attorney-client privilege relating to financial arrangements with attorneys.

The complaint describes a class action pursuant to Rule 23(b)(3). The allegation is that the various Nissan Corporations named in the complaint in the district court have engaged in an unlawful conspiracy with the named dealerships to violate § 1 of the Sherman Act.

The present conflict results from a notice to take depositions in which plaintiffs were served with a demand for the production of the following documents:

2. Current financial statements, income tax returns for the years 1972 and 1973, and any other writings or documents reflecting plaintiffs' ability to finance the expenses that may be involved in this purported class action litigation.

3. Any agreements plaintiffs have made, collectively or individually, among themselves, with their attorneys of record herein and with any other persons, pertaining to (a) the financing of the costs of this litigation, and (b) the payment of attorneys' fees that might be incurred. Such documents should include, in addition to express written agreements, correspondence and any and all other writings or records reflecting any oral agreements that may have been made or understandings that may have been reached.

Plaintiffs object to both requests on the ground of relevance and, secondly, on the assertion of attorney-client privilege.

Nissan U.S.A. has moved to compel production asserting that the information is relevant for the purpose of determining whether plaintiffs are adequate class representatives and on the ground that plaintiffs have demanded attorneys' fees, and hence information as to the fee arrangements that plaintiffs have made is necessary.[1]

On June 25, 1974 an extensive hearing was held which included considerable discourse between the court and counsel. The upshot of this was that the district court granted the defendants' requests as set forth above. The court also denied the request of plaintiffs to appeal the ruling pursuant to 28 U.S.C. § 1292(b). The refusal of the court to issue this certificate for interlocutory appeal necessitated the petitions which are before us.

In essence, the court's ruling was that the requested documents were relevant to the issue as to whether a class action was appropriate; that the material was germane to whether the plaintiffs were worthy representatives.

The court also noted that the defendants were entitled to inquire as to whether it was the kind of a class action in which a lawyer seeks to "capture the pot of gold at the end of the rainbow," and that discovery as to all of the details of the arrangement between the lawyers and clients was pertinent in order to make this evaluation and adjudication. The court distinguished between a trial and the inquiry leading to the determination of appropriateness of the class action. It indicated that the latter inquiry allows it to in effect police the lawyers' ethics in connection with the solicitation of business from class members.[2]

---

1. This on its face is thin.

2. Legal ethics would ordinarily be inquired into in separate proceedings but, in any event, they do not call for an independent inquiry where, as here, no evidence suggesting unethical conduct has surfaced.

## I.

### ARE THE EXTRAORDINARY REMEDIES APPROPRIATE?

 Our primary concern is with the propriety of the extraordinary writ. Mandamus is, of course, not to be used as a substitute for an appeal. *See* Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). Nevertheless, we have recognized that it may be used in some circumstances to review an interlocutory order. *See* Erie Bank v. United States District Court, Colorado, 362 F.2d 539 (10th Cir. 1966). *See also* Paramount Film Distributing Corp. v. Civic Center Theatre, Inc., 333 F.2d 358, 361 (10th Cir. 1964). The Supreme Court in Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) recognized that mandamus can be used in exceptional circumstances "amounting to a judicial 'usurpation of power' . . ."

 We are of the opinion that the writ of mandamus is appropriate in the present circumstances because, as will appear hereinafter, the court's action was within the standards which have been recognized by the cases. We view the trial court's decision as an unwarranted extension of the Supreme Court's decision in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), which extension would limit and curtail Rule 23 in a manner never contemplated.

## II.

### CONTENTIONS

Plaintiffs maintain that the production of the documents should not be allowed, first, because it invades the attorney-client privilege; secondly, because the substance of the fee arrangements is irrelevant and not calculated to lead to the discovery of admissible evidence; and, third, tax returns and other similar financial data are generally irrelevant and compulsory disclosure is not favored.

A further reason advanced is that the plaintiffs have agreed to pay the costs of notices to the members of the class.

## III.

### WHETHER THE MATERIAL SOUGHT WAS RELEVANT

The defendants as well as the district court relied strongly on Eisen v. Carlisle & Jacquelin, *supra*. We read the district court's decision as expanding and projecting the *Eisen* case. First of all, its facts were wholly different from ours. There, the class was extremely large. 2,250,000 members were identifiable. These were the odd-lot traders on the New York Exchange. The district court held a preliminary hearing on the merits and found that petitioner was more than likely to prevail at trial. It then assessed 90% of the notice costs to the defendants. The Supreme Court condemned the holding of a preliminary hearing on the merits and held also that this did not mitigate the error of assessing 90% of the costs to the defendants. The plaintiffs were held bound to advance the notice costs. There is nothing in the opinion of Mr. Justice Powell in *Eisen* which calls for unlimited inquiry into the financial capacity of plaintiff or which authorizes exposure of the plaintiff's income tax returns together with financial statements, plus documents showing specific financial capacity. Nor are fee arrangements with lawyers a prescribed discovery subject.

 Defendants considered it important to ascertain whether plaintiffs were able to pay *all* of the costs in the litigation including extensive depositions. We fail to see relevancy in these inquiries particularly with respect to *in limine* inquiry as to whether a class action is to be allowed. Ordinarily courts do not inquire into the financial responsibility of litigants. We generally eschew the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation.[3] We recog-

---

3. Federal judges take an oath to "administer justice without respect to persons, and do equal right to the poor and to the rich."

nize that the class action is unique and we see the necessity for the court to be satisfied that the plaintiff or plaintiffs can pay the notice costs, and we also agree fully with the Court's ruling in *Eisen* that due process requires decent notice. But we do not read *Eisen* as creating a presumption against finding a class action. Nor does it approve oppressive discovery as a means of discouraging a private antitrust action which, if meritorious, advances an important interest of the government.

We are aware that some lower court decisions have considered the plaintiff's ability to pay as relevant and proper in the present context. *See* P.D.Q. Inc. of Miami v. Nissan Motor Corp. in U.S.A., 61 F.R.D. 372 (S.D.Fla.1973); Ralston v. Volkswagenwerk, A.G., 61 F.R.D. 427 (W.D.Mo.1973).[4] However, in both of these cases in which antitrust violations were alleged, the plaintiffs sought to represent a class of all new car purchasers in the United States. Thus, there was legitimate concern about the ability of the plaintiffs to successfully lead a class of this magnitude. Also, the court in *Ralston* was concerned about its ability to manage the class. The mentioned considerations are not present here.

■ Nor do we see that the defendants have any legitimate concern as to whether plaintiffs will be able to pay their lawyers and will be able to pay a judgment for costs in the event that such a judgment is entered. In this respect we see no difference between the case at bar and any other lawsuit. Defendant will have ample opportunity for discovery under Rule 69 F.R.Civ.P. if it obtains judgment. *See* Federal Savings & Loan Insur. Corp. v. Krueger, 55 F.R. D. 512 (N.D.Ill.1972); Gangemi v. Moor, 268 F.Supp. 19 (D.Del. 1967) (Both cases suggest that there is no right to discovery of assets until judgment is obtained).

Finally, defendants know the plaintiff's resources. His salary is a matter of record in the case.

### IV.

In view of our ruling that the matters sought at this juncture and in relationship to the inquiry which was then being conducted are irrelevant, we deem it unnecessary to determine whether the documents sought are privileged.

The fee arrangement between plaintiffs and attorney may not be privileged. We have found cases which rule that such information is privileged and there are other cases to the contrary. It depends on the circumstances. We need not pursue this in view of our conclusion that it is irrelevant. Neither the court nor the defendant has legitimate concern as to the propriety of the arrangement under the code of responsibility. As indicated, whether the plaintiff will be able to pay costs is not now relevant. Tax returns are not generally discoverable. It is only when the plaintiff's income is directly in issue. Otherwise there is a public policy against an exposure.

At oral argument plaintiffs' lawyers expressed a willingness to reveal the fee arrangement to the court *in camera.* We do not know whether this would be helpful, but if it is deemed desirable by the court and counsel we see no objection to it.

We are not unaware of the fact that class actions are a heavy burden to all of the courts, and especially to the trial courts. We are sympathetic to the problems incident to managing these complex cases. Nevertheless, the rule is viable and must be recognized.

Accordingly, we are of the opinion that a writ of mandamus is proper, and so it is ordered that such a writ issue. It is further directed that the rule to show cause be made absolute.

---

4. *But see* to the contrary Sayre v. Abraham Lincoln Fed. Savings & Loan Ass'n., 65 F. R.D. 379 (E.D.Pa.1974), holding that such probing is irrelevant. The court considered both the ethics and inadequate representation problems in ruling on discovery similar to that sought here.