**Elvin JANSEN and Edward J. Schaecher, et al., Plaintiffs,**

**v.**

**The GREYHOUND CORPORATION, Armour and Company, and Armour Food Company, Defendants.**

**No. C 84–4122.**

United States District Court, N.D. Iowa, W.D.

Feb. 27, 1986.

---

William H. Bruckner, Houston, Tex., P.L. Nymann and Steven C. Kohl, Sioux City, Iowa, for plaintiffs.

Joseph F. DuBray, Sioux City, Iowa, James S. Petrie, Lawrence Summers, Chicago, Ill., for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes before the Court on defendants' Motion to Dismiss and Plaintiffs' Motion to Maintain a Class Action. Hearings were held at which all parties appeared through counsel. For the reasons set forth below, the Court denies the Defendant Armour and Company's Motion to Dismiss for failure to state a claim, sustains Defendant Armour Food Company's Motion to Dismiss for failure to state a claim, denies the defendants' motion to dismiss related to improper venue and sustains plaintiffs' Motion to Maintain a class action. Following the submission of the above motions, plaintiffs filed a Motion for Preliminary Injunction, and a Motion for Speedy Hearing on the Injunction Motion and for Consolidation of Hearing with Trial on the Merits. The Court reserves ruling and the Motion for Preliminary Injunction and sustains the Motion for Speedy Hearing and for Consolidation of Hearing with Trial on the Merits. The parties are directed to file a report concerning the earliest practical date this case can be tried.

The complaint is brought under the Employee Retirement Income Security Act (ERISA) and seeks to clarify rights to future benefits and to recover benefits allegedly due under an employee welfare benefit plan. Plaintiffs further allege that defendants breached their fiduciary duty under ERISA, 29 U.S.C. Sections 1104 and 1109 by advising plaintiffs in writing that certain benefits previously provided would be reduced or eliminated. Jurisdiction is invoked under ERISA, 29 U.S.C. Section 1132(e).

The Court first addresses the Motion to Dismiss. The Motion to Dismiss is essentially made in two parts. The first part addressed here is brought under Rule 12(b)(3) Fed.R.Civ.P. and raises the issue of whether venue is proper under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. Section 1132(e). The second part of the Motion is brought under Rule 12(b)(6) Fed.R.Civ.P. and concerns whether the plaintiffs state a claim under ERISA against two of the three defendants, Armour and Company (Armour) and Armour Food Company (AFC). This second part of the motion will be treated like a Rule 56 Motion for Summary Judgment because it refers to matters outside the pleadings.

## I. Venue

ERISA contains its own special venue provisions at 29 U.S.C. Section 1132(e)(2). It provides:

Where an action under this subchapter is brought in a district court of the United States, [1] it may be brought in the district where the plan is administered, [2] where the breach took place, *or* [3] where a defendant resides or may be *found,* and process may be served in any other district where a defendant resides or may be found.

*Id.* (emphasis supplied).

The defendants contend that (1) the plan is administered in Arizona, (2) the alleged breach occurred in Arizona, and (3) the plan administrator does not reside in and cannot be found in this district. The plan here is administered in Arizona. (Kotek Affidavit, paragraph 2), and the plaintiffs do not dispute this fact. The areas of dispute con-

cern defendants' contentions two (2) and three (3) only.

*Factual Background*

The named Plaintiffs are residents of the Northern District of Iowa. They allege that Defendants Armour and AFC "operate a meat packing plant within the Northern District of Iowa", that "Defendants at all times relevant herein have done business in the State of Iowa", and that "venue is proper in the Northern District of Iowa." (Complaint paragraphs 3, 5, and 8). Service, however, was accomplished by long arm statute by serving the summons and complaint upon the Iowa Secretary of State and by mailing copies thereof to each defendant in Phoenix, Arizona.

Since prior to the institution of the present litigation, Defendant Greyhound has been an Arizona corporation operating its business from Phoenix, Arizona. Greyhound is a financial holding company which owns stock and other securities of subsidiary and affiliated corporations. (Kotek Affidavit paragraph 2).

Since prior to the institution of the present litigation, Armour has been an Arizona corporation and a wholly-owned subsidiary of Greyhound with its principal place of business in Phoenix, Arizona. It does not itself operate a meat packing plant or otherwise do business itself in the State of Iowa. (Kotek Affidavit paragraph 3).

AFC was an unincorporated operating division of Defendant Armour. On December 20, 1982, AFC was incorporated as an Arizona corporation with all of its common stock owned by Armour. Since December 18, 1983, a new Armour Food Company has existed as a Delaware subsidiary of ConAgra, Inc., a corporation that defendants assert has no affiliation with Greyhound or Armour. (Kotek Affidavit paragraph 4).[1] However, AFC operated packing plants in Sioux City as a division of Armour, and hence had been plaintiffs' employer.

Plaintiffs worked for Armour/AFC in Iowa and earned their retirement benefits in Iowa. The retirement benefit checks are sent to the named plaintiffs in Iowa.

*Legal Conclusions*

■ In *Varsic v. U.S. Dist. Ct. for Cent. Dist., Etc.,* 607 F.2d 245 (9th Cir.1979), the Court stated:

> We consider first whether the district court erroneously granted the motion to transfer. The district judge apparently concluded that the ERISA venue provision did not permit venue to be laid in the district where an employee performs his work and earns his pension credits. We conclude that an unincorporated pension fund may be "found", within the meaning of 29 U.S.C. Section 1132(e)(2), in such a district.

*Id.* at 247.

This Court finds the reasoning in *Varsic* to be persuasive. In *Varsic* the Court construed the term "found" liberally, consistent with the broad purposes of the ERISA venue provision. Even though the defendants here are not "located" in the forum state, under *Varsic* this Court concludes that because the named plaintiffs worked for AFC in the Northern District of Iowa, earned their retirement benefits in Iowa, and were sent their benefit checks in Iowa the defendants are "found" in the Northern District of Iowa, and therefore venue is proper under Section 1132(e)(2). *See also, Ballinger v. Perkins,* 515 F.Supp. 673, 675 (W.D.Va.1981); *Bostic v. Ohio River Co. (Ohio Division), etc.,* 517 F.Supp. 627 (S.D. W.Va.1981); *but see, Boyer v. J.A. Majors Co. Emp. Profit Sharing Plan,* 481 F.Supp. 454, 458 (N.D.Ga.1979) (minority view holding that the fact a Plan "resides or may be found" in the forum since it is "doing business" there is too strained an analogy).

## II. Whether the action states a cognizable claim against Armour and AFC.

■ The defendants all contend that Armour and AFC must be dismissed because the proper party defendant under

---

1. At the hearing, plaintiffs contended that ConAgra is owned, in part, by either Greyhound or Armour. They produced no evidence to support this assertion. The Court sets out the parties positions by way of background only.

ERISA is the plan administrator, if one exists, and that a company-employer is not a proper party in a suit claiming benefits under an ERISA plan, unless the company also administrates the plan. They contend that the Kotek affidavit, paragraph 5, conclusively establishes that Greyhound is the plan administrator, not Armour or AFC. The Court disagrees.[2]

At 29 U.S.C. Section 1002(16)(A), ERISA establishes who is a plan administrator as follows:

16(A) The term "administrator" means—
(i) the person specifically so designated by the terms of the instrument under which the plan is operated;
(ii) if an administrator is not so designated, the plan sponsor; or
(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

The Court finds that there are sufficient factual issues concerning which entity or entities are plan administrators or plan sponsors therefore denies the entry of summary judgment in favor of Armour. Plaintiffs were sent letters regarding their retirement benefits on the stationary of both Greyhound and Armour. The named plaintiffs received letters from Armour concerning the retirement plan even after this litigation commenced. One letter received on Greyhound stationary is undated, but was received by retirees in "early 1984" (affidavit of Schaecher), presumably before this litigation commenced, states in pertinent part:[3]

As a result of the sale of Armour Food Company to ConAgra, the claims administration function for Armour and Company retirees is being transferred to The Greyhound Corporation.

(Exhibit A to Schaecher affidavit).

Another letter dated February, 1984 written on Armour stationary stated that Arm-

our retirement benefits would be "redesigned". (Exhibit B to Schaecher affidavit). Exhibits C, D, and E are written on Armour stationary and concern the retirement benefits program. Exhibits C, D, and E were received by Schaecher in August and September, 1984, after this lawsuit was filed.

Furthermore, defendants' answer to plaintiffs' second interrogatory states that Richard C. Stephan, Vice President–Controller of Armour and Company, and L. Gene Lemon, Vice President and General Counsel of Armour and Company, were involved in the decisions to modify retiree medical plan benefits; no other names are mentioned.

The defendants cite *Boyer v. J.A. Majors Co. Emp. Profit Sharing Plan, supra,* 481 F.Supp. at 458, for the position that only Greyhound, the plan administrator is a proper party. *Boyer* however held that in the absence of any evidence that the Company controlled the Plan or had anything to do with its administration, it was not a proper party defendant. Here, there is evidence that Armour exercised control over the plan, and made the very decisions that are the subject of this lawsuit.

■ If Greyhound truly is the administrator it has done nothing but confuse things by sending information on Armour stationary. Summary judgment is an extreme remedy that is not appropriate unless the moving party has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances. *Bradsher v. Missouri Pacific Railroad,* 679 F.2d 1253, 1256 (8th Cir.1982). Due to factual issues concerning the level of involvement of Armour and Greyhound in controlling the plan, the Court will deny

---

**2.** Paragraph 5 of the Kotek affidavit states: "Greyhound is the 'administrator' pursuant to ERISA 29 U.S.C. Section 1002(16)(A), of the employee welfare benefit plan in which Plaintiffs Jansen and Schaecher in case no. C84–4122 are participants and beneficiaries, and during February of 1984, mailed from Phoenix, Arizona letters informing Jansen, Schaecher and other participants and beneficiaries of certain benefit reductions and modifications."

**3.** This suit was commenced June 29, 1984.

defendants' motion for dismissal of Armour.[4] However, the motion as it applies to AFC stands in a different light. It is sustained because there is no evidence that AFC is involved in any way with the plan at times pertinent to this lawsuit. *See Boyer, supra,* 481 F.Supp. at 458.

No claims administration functions are now performed by AFC. AFC was sold to ConAgra, Inc. several months before the retirees' benefits were reduced. While counsel for plaintiffs stated at the first hearing that they believe Greyhound and ConAgra, Inc. are connected, no evidence of an ownership connection was presented, and more importantly, no evidence was presented that AFC is involved in management of the plan, or was involved at times pertinent to this lawsuit. The Court will therefore dismiss AFC.[5]

### III. Attorneys Fees

■ The plaintiffs contend they are entitled to attorneys fees as a sanction for the Defendant's venue motion pursuant to Rule 11, Fed.R.Civ.P. The Court finds that the motion was made in good faith, and denies the request for attorneys fees.

### IV. Class Action

■ Defendants resist Plaintiffs' Motion to Maintain a Class Action on the ground that Plaintiffs Jansen and Schaecher have interests which are antagonistic to or potentially in conflict with the interests of class members whom they propose to represent. Defendants essentially contend that there are several subclasses of retirees who received different benefits depending on which contract they retired un-

der. Defendants argue that if the named plaintiffs win their case, it may adversely impact on benefits paid other subclasses of retirees. Plaintiffs counter that the defendants cannot unilaterally decrease retirement benefits, whenever accrued, under the provisions of ERISA. These contentions are addressed *infra* p. 1027 in the sections concerning commonality and typicality.

The background concerning past retirement packages of Armour follows. Prior to March 16, 1967, Armour did not pay for health insurance coverage for retired hourly employees for Armour or AFC at plants covered by the Master Agreement. (Walling Aff. paragraph 2). In 1967–70, the Company started providing retirement benefits. (Walling Aff. paragraph 3). The same level of health insurance benefits was provided to retirees under the terms of the 1970–73 Master Agreement. (Walling Aff. paragraph 4). Benefits were improved under each of the 1973–76, 1976–79, and 1979–82 Master Agreements. (Walling Aff. paragraphs 5, 6, and 7). The named plaintiffs retired during the term of the 1979–82 Master Agreement: Jansen on June 1, 1981, and Schaecher on January 1, 1980. (Walling Aff. paragraph 9).

Defendants concede that on March 15, 1984 and September 1, 1984, the Company modified the health insurance benefits provided retirees. (Walling Aff. paragraph 8). These modifications applied to *all* retirees across the board. (Plaintiffs' Exh. 6, Defendants' Answer to Interrogatory No. 3). Different groups of retirees are not entitled to receive different forms of health

---

**4.** At the hearing, the Court told Greyhound that if it would agree in writing to assume liability in the event of a judgment and not later assert that "Armour or AFC were necessary parties", then the Court would probably dismiss Armour and AFC. After an exchange of letters between the parties, the Court held a second hearing with the lawyers. At the second hearing, counsel for all three defendants stated that he could not make a commitment to the Court which would breach the corporate integrity of Greyhound or its subsidiary. Defendant Greyhound's representations do not satisfy the Court that Greyhound would agree to assume liability for Armour in the event of a verdict for the plaintiffs. This case will be tried to the Court and Grey-

hound would not be prejudiced if after hearing evidence the Court found that Armour should not be a party to this suit. The same attorneys have appeared on behalf of all three corporations and the Court is persuaded that the total cost of litigating this case will not be much higher if Armour remains in the case until the Court decides its level of involvement after hearing the evidence at trial.

**5.** The Court would consider a Motion to Amend to reinsert AFC as a defendant should the plaintiffs find evidence linking AFC to management or control of the plan at times pertinent to this lawsuit.

and welfare benefits. Since the benefits of persons retiring prior to 1979 were increased to the same level as those retiring after 1979, the across the board cut impacted the pre–1979 retiree benefits the same as post–1979 retirees.

Plaintiffs seeking to certify their suit as a class action must demonstrate the four prerequisites of Fed.R.Civ.P. 23(a): numerosity, commonality, typicality, and adequacy of representation. The ultimate issue is whether the representatives' interests are such that they will vigorously prosecute the action so that the members' rights are certain to be protected. *Fertig v. Blue Cross of Iowa*, 68 F.R.D. 53, 58 (N.D. Iowa 1974). The Court finds that the representatives' interests here are such that they will vigorously prosecute the action so as to protect the class members. Further, the Court is satisfied that the burden of demonstrating the four elements of Rule 23(a) is met.

### (1) *Numerosity.*

The total number of retirees is estimated to be 5,251. Defendants concede that should any class of retirees be found appropriate, such class would be sufficiently large that joinder of all members would be impracticable. The requirement of numerosity is therefore satisfied.

### (2) *Commonality.*

The issues of law and fact are common to the class. All retirees were notified by letter dated February 1984, of a decision by Armour concerning all retirees to reduce medical coverage. (Plaintiffs' Exh. 4). The class members later received additional information indicating how the new insurance package would handle their claims. (Plaintiffs' Exh. 5). Defendants have treated all class members in a common manner. Indeed, defendants have stated in answer to Plaintiffs' Interrogatory No. 3 that, "The modifications of the retiree medical plan benefits applied to all retirees across the board". (Plaintiffs' Exh. 6). The defendants have treated the class of retirees on a group basis, since they apply the same group medical plan, deductibles, and exclu-

sions to all class members. Such treatment clearly meets the Rule 23(a)(2) commonality requirement. *See Musto v. American General Corp.*, 615 F.Supp. 1483, 1493 (M.C.Tenn.1985).

### (3) *Typicality.*

The claims of the representative party are typical of the claims of the class. Defendants assert that plaintiffs are requesting that all retiree benefits be deemed to vest unalterably at their retirement. If this were true, the Court would not certify a class with just the two class representatives here who both retired under the same contract. Plaintiffs, however, seek a determination that their benefits, however accrued, cannot later be unilaterally reduced. Thus, plaintiffs' claim is distinguished from what defendants describe it as in that the plaintiffs seek to protect all retirees from unilateral unbargained for decreases in benefits. The fact that some earlier retirees retired under contracts where benefits initially were lower does not make their position as class members antagonistic to the class representatives as defendants contend because benefits for earlier retirees were elevated to the same level as later retirees, in part, through collective bargaining agreements. Thus, the across the board cutbacks affect all class members, and the named plaintiffs' petition to protect retirement benefits from unilateral unbargained for decreases are not antagonistic to the members of the plaintiffs' class. The named plaintiffs claims are therefore typical of the claims of the class. *Musto, supra,* 615 F.Supp. at 1493.

### (4) *Adequacy of Representation.*

Mr. Nyman for the plaintiffs is an experienced lawyer having been admitted to practice to this Court since 1951. He has experience in the meat packing industry serving as general counsel for Iowa Beef Processing, Inc. (IBP) for over eight years and representing IBP and other meat packing companies after his service as General Counsel ended. James C. Zalewski, co-counsel has had substantial experience in the field of labor law, and specifically in

the area of ISA. Both law firms representing plaintiffs have been involved in class action litigation.

Plaintiff Schaecher is a former union steward who worked for Armour from 946–79. Plaintiff Jansen worked for Armour from 1951–81. Plaintiffs have received commitments from 34 class members to help finance the lawsuit. Plaintiffs' attorneys have agreed to advance plaintiffs costs incurred in trying this case. Plaintiffs have amassed some funds through a combination of personal contributions and funds collected from former co-workers. The Court finds that the plaintiffs have sufficient wherewithal to send notice in one of the periodic mailings of defendants.[6]

The Court finds that the parties opposing the class acted on grounds generally applicable to the class as required under Rule 23(b)(2). The predominant relief sought in this action is declaratory and/or injunctive in nature. Rule 23(b)(2) applies to class actions primarily for declaratory or injunctive relief where the party opposing the class has acted on grounds generally applicable to the class. The monetary relief requested in this action involves retroactive payment of welfare benefits to the class members, as well as costs and attorney fees incurred by the plaintiffs· in prosecuting this action. Any monetary relief awarded will flow from the declaratory and injunctive relief requested and is secondary to the declaratory/injunctive relief requested. The Court finds that plaintiffs meet the requirements for (b)(2) certification. Therefore a class action can properly be certified under Rule 23(b)(2) Fed.R.Civ.P.[7] The Court will certify a class consisting of all retired bargaining unit members of Armour and Armour Foods Company identified in Plaintiffs' Exhibit 1.

While both parties insisted at the hearing that notice is unnecessary in this action, as a condition of class certification, the Court will require notification of all class members under Rule 23(d)(2). Notification is desirable here because it gives the members an opportunity to indicate their satisfaction or dissatisfaction with the class action,[8] and to permit them to intervene to present claims if they chose. All prospective members in the class shall be given

6. Most Courts addressing the issue of the class representatives' financial responsibility have found it unnecessary to inquire into the plaintiffs' war chest except to ascertain that the representatives are able to pay the cost of sending notice. *See eg., Sanderson v. Winner,* 507 F.2d 477, 479–80 (10th Cir.1974) (per curiam), *cert. denied sub nom., Nissan Motor Corp. v. Sanderson,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *Dirks v. Clayton Brokerage Co. of St. Louis Inc.,* 105 F.R.D. 125, 134 (D.Minn.1985); *In re McDonnell Douglas Corp. Securities Litigation,* 92 F.R.D. 761, 762 (E.D.Mo.1981); *Sommers v. Abraham Lincoln Federal Savings & Loan Association,* 66 F.R.D. 581 (E.D.Pa.1975), or that expenses of the litigation will be paid by plaintiffs, or others, as they come due. *Ferraro v. General Motors Corp.,* 105 F.R.D. 429, 431–33 (D.N.J.1984). There are some district court decisions which take an opposite view requiring more detailed inquiry into the representatives' finances. *See eg., Rode v. Emery Air Freight Corp.,* 76 F.R.D. 229, 231 (W.D.Pa.1977); *Ralston v. Volkswagenwerk, A.G.,* 61 F.R.D. 427, 433 (W.D.Mo.1973); *P.D.Q. of Miami v. Nissan Motor Corporation In U.S.A.,* 61 F.R.D. 372, 375, n. 5 (S.D.Fla.1973). This Court is persuaded by the reasoning in the line of cases following the Tenth Circuit's approach in *Sanderson* wherein the Court stated, "Ordinarily courts do not inquire into the financial responsibility of litigants. We generally eschew the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation.[3] [Footnote 3: Federal judges take an oath to 'administer justice without respect to persons, and do equal right to the poor and to the rich.'] We recognize that the class action is unique and we see the necessity for the Court to be satisfied that the plaintiff or plaintiffs can pay the notice costs ..." *Sanderson supra* at 480.

7. *Musto, supra,* is a remarkably similar case in which retirees of a successor employer sought relief from the termination and alteration of retirement benefits. The Court there certified a class under Rule 23(b)(2) finding that the employer acted uniformly in its treatment of all retirees' retirement benefits. 615 F.Supp. at 1493. *Musto* is persuasive authority for certifying a class under Rule 23(b)(2) here.

8. Notification is not mandatory under Section (b)(2), however, the Court can require it under Section (d)(2) for the protection of class members or otherwise for the fair conduct of the action. The Court considers notification particularly desirable here in light of the defendants' contention of antagonistic interests of subclasses. While the Court disagrees with this contention, notification would flush out any class members whose interests may not be fairly represented.

written notice of the contemplated action as soon as practicable, specifically delineating the nature of the action, the relief sought, and any other information relevant to class notification. The notification should provide all class members with an impartial account of the benefits sought by the representative party, in comparison to the benefits and rights they would have under the plan should the defendants prevail. The Court is persuaded that this can be handled at low cost through one of the periodic mailings Greyhound or Armour makes to its retirees.

The Court will require the parties to confer and draft a notice to the plaintiff class. They are directed to provide a copy of the proposed notice and any other details relevant to giving notice to the Court for approval. The parties shall also report the earliest practical date notice can be mailed. Failure of the parties to agree on the form of the notice, or on an appropriate date for mailing may result in a ruling unsatisfactory to one or both parties, so the Court expects the parties to confer in good faith to resolve the notice requirements.

IT IS THEREFORE ORDERED that:

1. The Motion to Dismiss Armour and Company for failure to state a claim is denied.

2. The Motion to Dismiss Armour Foods Company for failure to state a claim is sustained.

3. The Motion to Dismiss for lack of venue is denied.

4. The Plaintiffs' Motion for Class Action is sustained, and the following class is certified:

   All retired bargaining unit members formerly employed by Armour and Company or Armour Foods Company identified in plaintiffs' Exhibit 1.

5. After conferring, the parties are directed to file a report within twenty (20) days stating (a) the earliest practical date this case can be tried, (b) the earliest practical date notice to the class can be mailed, and any other details relevant to class notification.

6. After conferring the parties are directed to submit a copy of the notice they propose to mail to the plaintiff class members within twenty (20) days.