**In re Rocky Dwayne SHEFFIELD, Debtor.**

**Rocky Dwayne Sheffield, Plaintiff,**

**v.**

**Homeside Lending, Inc., Defendant.**

**Bankruptcy No. 97–10511.**
**Adversary No. 99–1124.**

United States Bankruptcy Court,
S.D. Alabama.

June 5, 2001.

Steve Olen and Steven L. Nicholas, Mobile, AL, Donald J. Stewart, Mobile, AL, for Plaintiffs.

Jeffery J. Hartley, Mobile, AL, Thomas M. Hefferon, Washington, DC, for Defendants.

## ORDER COMPELLING PLAINTIFF TO PRODUCE PLAINTIFF'S COUNSEL'S FEE AGREEMENTS

MARGARET A. MAHONEY, Chief Judge.

This matter is before the Court on the motion of Homeside Lending, Inc. ("Homeside") to compel the production of plaintiff's counsel's fee agreements. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is granting Homeside's motion to compel the production of plaintiff's counsel's fee agreements.

### FACTS

This is a class action suit against Homeside for alleged violation of federal bankruptcy law. Homeside asks this Court to compel the production of agreements between Plaintiff's counsel regarding the division of attorneys fees. Homeside claims the fee agreements are relevant to this Court's decision on appointment of class counsel. Plaintiff contends the agreements are not relevant and as such are not within the permissible scope of discovery. Plaintiff suggests that if this Court were to disagree and find the fee agreements discoverable, that the Court limit the production to in camera inspection.

### LAW

Federal Rule of Civil Procedure 26(b) governs the scope of and limits on discovery. Rule 26(b)(1) provides:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence....

■■■ Fee arrangements are generally not privileged because they reveal nothing about the advice sought or given. See *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 304 (3rd Cir.1999); *United States v. Anderson*, 906 F.2d 1485, 1492 (10th Cir.1990); *United States v. Grand Jury Matter*, 789 F.Supp. 693, 695 (D.Md.1992); *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir.1973). The attorney-client privilege does not protect fee arrangements absent strong probability that disclosure would implicate the client in criminal activity. *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir.1980). "[D]isclosure of the fee arrangement does not inhibit the normal communications necessary for the attorney to act effectively in representing the client." *ERA Franchise Systems, Inc. v. Northern Ins. Co. of New York*, 183 F.R.D. 276 (D.Kan.1998) (quoting *United States v. Anderson*, 906 F.2d at 1492). The fee agreement also does not come within the work-product privilege. See *Murray v. Stuckey's Inc.*, 153 F.R.D. 151, 153 (N.D.Iowa 1993). The question remaining under Rule 26(b) is whether the information is relevant. Plaintiff contends that the fee agreements are not relevant. To support this contention, Plaintiff cites *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir.1996). The Bowling case held that the district court properly exercised its discretion in not ordering the production of such agreements. The court concluded that how the attorneys "ultimately divide that fee among themselves appears to be irrelevant." *Id.* at 781. However, the court noted that the agreements were only "irrelevant" because the court had already approved a settlement of the case. *Id.* at n. 3. The Bowling court noted that if the issue had arisen earlier, "[t]he risk that counsel has in some way been 'bought off' and provided with a significant incentive to not represent the class's interest would clearly make these agreements relevant." *Id.*

Plaintiff also cites *Sanderson v. Winner*, 507 F.2d 477 (10th Cir.1974). The Sanderson court found the fee agreements in that case were irrelevant. The court found that "[n]either the court nor the defendant has legitimate concern as to the propriety of the arrangement under the code of responsibility." *Id.* at 480. The plaintiffs sought discovery of the agreements for the purpose of determining whether the plaintiffs were able to pay all the costs of litigation. *Id.* at 479. The Sanderson court noted that other courts have found fee agreements discoverable where the class is very large or difficult to manage and there is a legitimate concern about the ability of the plaintiffs to successfully represent the class. *Id.* at 480. The Sanderson court based its decision on the fact that the defendants did not have a legitimate concern as to whether plaintiffs would be able to pay all the costs of litigation. *Id.*

Other courts have found fee agreements discoverable. For example in *Klein v. Miller Residential Services, Inc.*, 82 F.R.D. 6 (N.D.Tex.1978) the court found that the inquiry into plaintiffs financial status and fee arrangement was relevant to the question of plaintiffs' ability to protect the interests of potential class members by adequate funding of the lawsuit, and as to the question of the award of attorneys fees in the settlement or possible judgment of the case. The Klein court noted that a court "must maintain constant

722

vigilance in overseeing the conduct of the self-appointed class representative." *Id.* at 9 (citing *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir.1973)). In another case, *Epstein v. American Reserve Corp.,* 1985 WL 2598, *3 (N.D.Ill. Sept.18, 1985), the court, citing Klein, found that the fee arrangements were relevant to the ability of named plaintiffs to protect the interest of potential class members and hence are a proper subject for discovery.

In this case, defendants point to the testimony of attorney Herman Padgett that he will receive a flat rate of "two percent or five percent" of the attorneys fees awarded for the "small amount of time I spent on this." Homeside argues that this is "apparently without regard to the actual time that he spends on the litigation or whether or not this Court ever approves him to act as class counsel." The named plaintiff, Rocky Dwayne Sheffield, testified that he did not know that part of any fees received by his counsel might be shared with Mr. Padgett or by other attorneys. Because this class action involves bankruptcy fees, the attorneys involved in the individual's bankruptcy case may have to testify at trial concerning their knowledge and understanding of those fees and whether they conveyed that knowledge to their clients. The fee agreements between plaintiff's counsel and Mr. Padgett or other attorneys involved may be relevant as evidence of their bias. The fee agreements may also be relevant at the settlement stage. As noted earlier, the Bowling court stated that where there is a "risk that counsel has in some way been 'bought off' and provided with a significant incentive to not represent the class's interest would clearly make these agreements relevant." Rule 26(b)(1) only requires that the discovery appears "reasonably calculated to lead to the discovery of admissible evidence." Due to the possibility of the discovery of potential conflicts or biases, this

Court finds that the discovery of the fee agreements is reasonably calculated to lead to the discovery of admissible evidence.

 In addition, this court does not see any reason to require the production to be limited to in camera review. As discussed above, the fee agreements are not privileged and do not contain information concerning the advice sought or given. Plaintiff's have not advanced any reason for this court to protect the information from the inspection of defendant.

THEREFORE, IT IS ORDERED AND ADJUDGED that the motion of Homeside Lending, Inc. to compel Plaintiff to produce plaintiff's counsel's fee agreements is GRANTED.