Gay v. Peoples Bank, 2014 NCBC 45.

STATE OF NORTH CAROLINA

LINCOLN COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 383

JOSEPH LEE GAY, Individually and On
Behalf of All Persons Similarly Situated,

        Plaintiff,

v.

PEOPLES BANK,

        Defendant.

ORDER AND OPINION

THIS MATTER is before the Court upon Defendant Peoples Bank's
("Defendant") Motion to Compel ("Defendant's Motion") and Plaintiff Joseph Lee
Gay's ("Plaintiff") Motion to Compel ("Plaintiff's Motion") in the above-captioned
case. After considering the Motions, the briefs in support of and in opposition to the
Motions, and the arguments of counsel at the September 11, 2014 hearing, the
Court **GRANTS** Defendant's Motion, and **GRANTS** in part and **DENIES** in part
Plaintiff's Motion.

> *Squitieri & Fearon, LLP by Stephen J. Fearon, and Sigmon, Clark, Mackie,
> Hanvey & Ferrell, P.A. by Stephen L. Palmer and Amber Reinhardt for
> Plaintiff Joseph Lee Gay.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard LLP by Reid L. Phillips
> and Daniel F.E. Smith for Defendant Peoples Bank.*

Bledsoe, Judge.

I.

BACKGROUND

{1}    The factual and procedural background of this case is recited in detail in
*Gay v. Peoples Bank*, no. 13 CVS 383 (N.C. Super. Ct. Apr. 15, 2014) (denying
Defendant's Motion for Judgment on the Pleadings). The facts pertinent for
purposes of resolving the present Motions are set forth below.

## A.

## DEFENDANT'S MOTION TO COMPEL

{2}     Defendant served its First Set of Interrogatories and Requests for Production ("Defendant's Discovery Requests") on June 16, 2014. (Def.'s Mot., p. 1.) Defendant's Discovery Requests asked Plaintiff to produce "letters or other forms of agreement concerning the terms of [Plaintiff's] representation by [his] lawyers in the case." (Def.'s Mot., p. 2.) Plaintiff objected to production of the documents based on the attorney-client privilege and the work product doctrine. (Def.'s Mot., p. 2.)

{3}     On September 4, 2014, Defendant filed a Motion to Compel seeking an order from the Court requiring Plaintiff to produce to Defendant (1) "the retainer letter between Plaintiff and Squitieri & Fearon, LLP, which was signed on September 24, 2012" (the "Retainer Letter") and (2) "the representation agreement between Plaintiff, Squitieri & Fearon, LLP, Sigmon, Clark, Mackie, Hanvey & Farrell, P.A., Greg Coleman Law PC, Wexler Wallace LLP, and Hansen, Riederer, Dickinson, Crueger & Reynolds LLC which was signed on February 8, 2013" (the "Representation Agreement"). Plaintiff filed his Response to Defendant's Motion on September 8, 2014.

## B.

## PLAINTIFF'S MOTION TO COMPEL

{4}     On August 29, 2014, Plaintiff sent a letter to Defendant, requesting that Defendant produce four of its current or former executive managers for depositions: (1) William Cable, Defendant's current Chief Operating Officer; (2) Anthony Wolfe, Defendant's former President and Chief Executive Officer;[1] (3) A. Joseph Lampron, Defendant's current Chief Financial Officer; and (4) Joseph Beamon, Defendant's current Chief Administrative Officer. (Pl.'s Mot., Ex. A.)

{5}     Defendant objected to the depositions as unduly burdensome and unnecessarily duplicative because Plaintiff had previously deposed five of

---

[1] Defendant no longer employs Mr. Wolfe.

Defendant's other executives in their capacities as Rule 30(b)(6) deponents for Defendant.

{6}     On September 9, 2014, Plaintiff filed a Motion to Compel seeking an order from the Court requiring Defendant to produce these four witnesses for deposition and "compelling Defendant to identify its trial witnesses."  Defendant filed its Response to Plaintiff's Motion on September 10, 2014.

{7}     The Court held a hearing on the Motions on September 11, 2014, pursuant to the request of the parties that the Court hear the Motions at the scheduled status conference in the case. Plaintiff has not yet asked the Court to certify a class in this case.

## II.

## ANALYSIS

## A.

## DEFENDANT'S MOTION TO COMPEL

{8}     Defendant argues that the Court should compel Plaintiff to produce the Retainer Letter and Representation Agreement because the documents are relevant and not protected by the attorney-client privilege or the work product doctrine. (Def.'s Mot., p. 2.)

{9}     Plaintiff argues in opposition that the documents are irrelevant to the litigation and in any event constitute documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.  (Pl.'s Resp. Def.'s Mot., p. 3–4.)

{10}     Plaintiff relies on *Raymond v. N.C. Police Benevolent Ass'n*, 365 N.C. 94, 721 S.E.2d 923 (2011), for his contention that the Retainer Letter and Representation Agreement contain information subject to the attorney-client privilege.  As called for by *Raymond*, all parties agreed to the Court's *in camera* review of the Retainer Letter and Representation Agreement in connection with Defendant's Motion, and the Court has therefore reviewed the two documents.  *Id.* at 95, 721 S.E.2d at 924 (directing that "[a]n *in camera* review by the trial court is

the appropriate mechanism to be used for determining the applicability of the privilege").

{11}   Before the Court may turn to the application of privilege, however, the Court must determine whether the Retainer Letter and Representation Agreement are relevant to the subject matter involved in this litigation.  Rule 26 of the North Carolina Rules of Civil Procedure ("N.C.R.C.P.") permits parties to obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." N.C.R.C.P. 26(b)(1) (2014).  "The test of relevance for discovery purposes only requires that information be 'reasonably calculated to lead to the discovery of admissible evidence[.]'"  *Lowd v. Reynolds*, 205 N.C. App. 208, 214, 695 S.E.2d 479, 483 (2010) (quoting Rule 26(b)(1)).

{12}   In its brief in support of Defendant's Motion, Defendant does not address how the two documents at issue are relevant to the subject matter involved in this action.  At the hearing, Defendant argued that the retention agreements are reasonably calculated to lead to admissible evidence concerning whether this action may proceed as a class action and are necessary to Defendant's preparation for the mediation currently scheduled for November 12, 2014.  The Court finds Defendant's arguments unpersuasive at this stage of the proceedings.

{13}   The North Carolina appellate courts do not appear to have addressed the production of an attorney fee agreement in a purported class action.  Federal case law from around the country, however, holds that in such circumstances, attorney fee agreements are typically not relevant, at least until after certification of the proposed class.  *See, e.g., Sanderson v. Winner,* 507 F.2d 477, 480 (10th Cir. 1974) (reversing order requiring production of fee agreement noting "Defendant will have ample opportunity for discovery under Rule 69, if it obtains judgment"); *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 2006 U.S. Dist. LEXIS 1308, *8 (D. Md., Jan. 9, 2006) (denying motion to compel production of fee agreement in class action stating "the appropriate time for inquiry into fee arrangements is after judgment"); *see*

*generally* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION § 21.141 (4th ed. 2004), *available at* www.fjc.gov/public/pdf.nsf/ lookup/mcl4.pdf/$file/mcl4.pdf ("Precertification inquiries into the named parties' finances or the financial arrangements between the class representatives and their counsel are rarely appropriate . . ."); 7 A. Conte and H. Newberg, *Newberg on Class Actions*, § 22:79 (4th ed. 2005) ("Defendants often request discovery regarding fee arrangements between the plaintiffs and their counsel, but courts usually find such discovery to be irrelevant to the issue of certification.").

{14}    Federal courts have recognized certain limited circumstances in which pre-certification production of a fee agreement is appropriate, none of which Defendant contends is present here.  For example, Defendant does not assert that it needs this information to ascertain whether class counsel and plaintiff may maintain the class action and pay associated costs. *See Porter v. NationsCredit Consumer Disc. Co.*, 2004 U.S. Dist. LEXIS 13641, \*7, 2004 WL 1753255 (E.D. Pa., Jul. 9, 2004) ("Fee agreements may be relevant to a plaintiff's ability to protect the interests of potential class members by adequately funding the suit, and to the question of awarding attorney's fees upon settlement or judgment."); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009) ("Most courts . . . find [discovery of fee agreements] irrelevant to the issue of class certification, except perhaps to determine whether the named plaintiffs and class counsel have the resources to pursue the class action.").  Nor does Defendant contend that Plaintiff's counsel has engaged in misconduct that may result in denial of class certification. *See, e.g., Baker v. Masco Builder Cabinet Grp., Inc.*, 2010 U.S. Dist. LEXIS 104018, \*11–\*12 (D.S.D., Sept. 27, 2010) ("Courts have also allowed defendants to inquire into alleged misconduct of plaintiffs' counsel because such misconduct may result in the denial of class certification."); *In re Mid-Atlantic Toyota Antitrust Litigation*, 93 F.R.D. 485, 488–91 (D. Md. 1982) (denying class certification because fee agreements violated existing disciplinary rules).

{15}    The Court finds these federal cases persuasive and concludes that at this stage of the proceedings, Defendant has failed to show that the Retainer Letter and

Representation Agreement are relevant to the subject matter involved in this case. The Court therefore denies Defendant's Motion to Compel without prejudice to Defendant to renew its Motion in the event Defendant may be able to show relevance at a later stage of this proceeding, including in the event a class is certified.[2]

B.

PLAINTIFF'S MOTION TO COMPEL

i. Depositions of Defendant's Executives

{16}   Plaintiff contends it needs to depose four of Defendant's current and former executives who "were integral to the bank's fee-generation scheme." (Pl.'s Mot., p. 2.)  Plaintiff's stated motive for seeking these four depositions is to "prepare for trial, narrow the issues in the case, and . . . prevent surprises." (*Id.*)  At the hearing, Plaintiff proposed as alternative relief that he be permitted to take the depositions of Mr. Cable and Mr. Wolfe now and reserve his right to seek the depositions of Mr. Beamon and Mr. Lampron later.

{17}   Defendant opposes Plaintiff's request for depositions and argues that because Plaintiff has already deposed five of Defendant's executives[3] in their capacities as Defendant's N.C.R.C.P. Rule 30(b)(6) designees, the depositions of the additional four executives will generate unnecessary and repetitive evidence and cause undue burden to Defendant.  As a result, Defendant asks the Court to reject Plaintiff's attempt to compel these requested depositions.

{18}   The Court maintains broad power under N.C.R.C.P. Rule 26(c) to protect a party from unreasonable annoyance, oppression, or undue burden or expense. N.C.R.C.P. Rule 26 ("[T]he [C]ourt . . . may make any order which justice requires to

---

[2] In light of its ruling, the Court does not find it necessary to address whether the Retention Letter and Representation Agreement are privileged attorney-client communications or protected attorney work product at this time.

[3] The five executive officers are (1) Reggie Abernathy, Information Technology Officer, (2) George Earp, Vice President of Finance, (3) Kim Bazzle, Head of Marketing, (4) Connie Ollis, First Vice President for Compliance and Security, and (5) Andrew Puntch, Assistant Vice President of Operations.

protect a party or person from unreasonable annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the discovery not be had . . . .").[4]

{19}  Plaintiff alleges Defendant engaged in an unlawful scheme to inflate its profits at the expense of Defendant's customers through the imposition of overdraft fees and that each of the executives has knowledge of the alleged scheme. Defendant does not claim that the requested deponents do not possess relevant information.

{20}  Rather, Defendant contends that Defendant is a relatively small bank and that it will be very disruptive and unduly burdensome in light of the repetitive testimony likely to be generated to require the three top-level executives who currently work at the bank – Mr. Cable, Mr. Beamon, and Mr. Lampron – to submit to depositions.  Although Defendant argues that Mr. Wolfe's testimony would similarly be repetitive of testimony already obtained through Defendant's 30(b)(6) deponents, Defendant acknowledges that Mr. Wolfe is no longer an employee of Defendant, is now retired and that his submission to deposition will not involve the same disruption and burden that would result from depositions of the other three executives.

{21}  The Court is persuaded that Defendant faces a sufficient risk of disruption and undue burden in these circumstances to afford Defendant limited relief. Accordingly, for good cause shown, the Court, in its discretion, concludes that

---

[4] Although the North Carolina courts have not formally adopted the "apex doctrine," the Court notes that a number of federal courts have recognized the doctrine in circumstances similar to those here to prevent a party from harassing an opponent or inflating its discovery costs by seeking the deposition of a high ranking corporate executive. *See, e.g., Performance Sales & Mktg., LLC v. Lowe's Cos.*, 2012 U.S. Dist. LEXIS 131394, *18–*21, 2012 WL 4061680, *3–*4 (W.D.N.C., Sept. 14, 2012) (noting the rebuttable presumption that the deposition of a high-ranking corporate executive violates the proportionality standard of Fed. R. Civ. P. 26(b)(2)(C) or constitutes good cause for issuance of a protective order as an "annoyance" or "undue burden" within the meaning of Rule 26(c)(1)).  Under the apex doctrine, "before a plaintiff may depose a corporate defendant's high ranking officer, the plaintiff must show how '(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'" *Smithfield Business Park, LLC v. SLR Int'l Corp.*, 2014 U.S. Dist. LEXIS 16338, *6 (E.D.N.C., Feb. 10, 2014).

Plaintiff should be permitted to take the depositions of William Cable and Anthony Wolfe at this time but that Plaintiff should not be permitted to proceed with the depositions of Mr. Beamon and Mr. Lampron absent Defendant's consent or further order of the Court. The Court further concludes that this Order should be without prejudice to Plaintiff's right to seek an order from this Court compelling Defendant to produce Mr. Beamon and Mr. Lampron for deposition at a later time for good cause shown.

ii. <u>Plaintiff's Request for Defendant's Trial Witness List</u>

{22} Plaintiff also contends that the Court should "direct the bank to identify its trial witnesses so that Plaintiff can consider deposing those witnesses before the December 15, 2014 deadline for fact discovery." (Pl.'s Mot., p. 4.) Plaintiff argues that this identification will "streamline the litigation process" and prevent surprise. (*Id.*) Defendant opposes this request as premature.

{23} The Court first notes that Plaintiff admitted at the hearing that he has not yet served interrogatories on Defendant requesting this information. It is axiomatic that Defendant is not obligated to provide answers to interrogatories that Plaintiff has not yet served. Because Plaintiff has not asked Defendant to identify its trial witnesses through any of the permitted discovery devices, the Court cannot compel Defendant to do so.

{24} Moreover, even if a proper discovery request seeking this information had been served, North Carolina law is clear that "'a party is not entitled to find out, by discovery, which witnesses his opponent intends to call at the trial.'" *King v. Koucouliotes*, 108 N.C. App. 751, 755, 425 S.E.2d 462, 464 (1993) ("Instead, the names of witnesses and lists of exhibits a party opponent intends to use at trial are obtainable through the pretrial conference."). Plaintiff has not shown any basis for "a deviation from this general rule of nondiscoverability." *Id.* at 756, 425 S.E.2d at 465.

{25} For the foregoing reasons, the Court concludes Defendant is not required to identify its trial witnesses to Plaintiff at this time.

{26}   **ACCORDINGLY**, the Court hereby **ORDERS**, **ADJUDGES**, and **DECREES** as follows:

a. Defendant's  Motion to Compel is **DENIED** without prejudice to Defendant's right to renew the Motion in the event Defendant may be able to show relevance at a later stage of this proceeding, including after a class is certified;

b. Plaintiff's Motion to Compel is **GRANTED, in part**, to permit Plaintiff to depose William Cable and Anthony Wolfe pursuant to the North Carolina Rules of Civil Procedure and the Case Management Order entered May 14, 2014, and without prejudice to Plaintiff's right to renew the Motion in the event Plaintiff seeks to depose Joseph Lampron and Joseph Beamon for good cause shown;

c. All other requested relief is **DENIED**.

**SO ORDERED**, this the 17th day of September 2014.