LANGDON B. RAYMOND v. NORTH CAROLINA POLICE BENEVOLENT ASSOCIA-
TION, INC., A NORTH CAROLINA CORPORATION; SOUTHERN STATES POLICE
BENEVOLENT ASSOCIATION, INC., A FLORIDA CORPORATION;[1] AND JOHN
MIDGETTE

No. 230PA10

(Filed 8 April 2011)

**Attorneys— client relationship—tripartite**

 A tripartite attorney-client relationship existed between the
Southern States Police Benevolent Association (SSPBA), an offi-
cer who was an existing member of the association, and the
attorney to whom the officer was referred by the SSPBA, which
paid at least some of the attorney's fees and litigation expenses
and expected to be informed of developments in the litigation.
The communications between the SSPBA, the officer, and the
attorney satisfied the five-factor *Murvin* test.

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a unani-
mous, unpublished decision of the Court of Appeals, —— N.C. App.
——, 692 S.E.2d 487 (2010), affirming an order compelling discovery
entered 5 March 2009 by Judge Mark Powell in Superior Court,
Buncombe County. Heard in the Supreme Court 10 January 2011.

 *Contrivo & Contrivo, P.A., by Frank J. Contrivo, Jr., for
plaintiff-appellee.*

 *Roberts & Stevens, P.A, by Kenneth R. Hunt, for defendant-
appellants.*

 *Katherine Lewis Parker for ACLU of North Carolina Legal
Foundation; Patterson Harkavy LLP, by Burton Craige, for
North Carolina Advocates for Justice; Thomas M. Stern, and
Ferguson, Chambers, Stein, Gresham & Sumter, P.A., by
John W. Gresham, for North Carolina Association of Educa-
tors; Smith Moore Leatherwood, LLP, by Jon Berkelhammer,
and McAngus Goudelock & Courie, PLLC, by John T. Jeffries,
for North Carolina Association of Defense Attorneys, amici
curiae.*

---

 1. Defendants' pleadings and other documents show that Southern States Police
Benevolent Association is actually a Georgia non-profit organization. However, plain-
tiff's complaint, as well as the lower court's caption, identify the organization as a
Florida corporation. For consistency, we have retained the plaintiff's original identifi-
cation of the SSPBA as a Florida corporation.

**RAYMOND v. N.C. POLICE BENEVOLENT ASS'N, INC.**

[365 N.C. 94 (2011)]

*McGuinness Law Firm, by J. Michael McGuinness, for National Association of Police Organizations, amicus curiae.*

NEWBY, Justice.

In this case we must decide whether a professional membership association, one of its members, and an attorney hired by the association to represent that member established between them an attorney-client relationship. Recognizing its tripartite nature, we conclude this relationship is that of attorney and client such that certain communications within it are privileged. An *in camera* review by the trial court is the appropriate mechanism to be used for determining the applicability of the privilege. Accordingly, we reverse and remand the decision of the Court of Appeals.

The facts are alleged to be as follows: In October 2006 Timothy Foxx, a police officer for the Town of Fletcher, North Carolina, was demoted after notifying his superiors of a fellow officer's misconduct. In addition to being demoted, Foxx alleges that he was assaulted by the Chief of Police, Langdon Raymond. After the incident, Foxx contacted the Legal Department of the Southern States Police Benevolent Association ("SSPBA"), of which he had been a dues-paying member since 2005, to request assistance in handling his employment situation.

The SSPBA "represent[s] officers and other public employees in legal, labor, legislative, and political matters which affect the law enforcement profession." The SSPBA advertises that its legal services include emergency representation for shooting incidents, defense representation in civil or criminal actions stemming from work-related conduct, and representation in grievance and disciplinary matters. For grievance and disciplinary matters, the SSPBA policy states that its members are entitled to assistance from the SSPBA staff, aid in securing necessary counsel, and payment of attorney fees and court costs. To fund such legal services the SSPBA relies on membership dues and a requirement that successful claimants reimburse the SSPBA for attorney fees and court costs.

When Foxx contacted the SSPBA, he initially spoke with Grady Dukes, a licensed attorney. After the initial consultation, Foxx was contacted by Joni Fletcher, another licensed attorney for the SSPBA, and John Midgette, the Executive Director of the North Carolina Police Benevolent Association ("NCPBA"), a division of the SSPBA. Fletcher and Midgette assisted Foxx in filing an initial grievance. The

SSPBA ultimately referred Foxx to Shannon Lovins, an Asheville attorney who agreed to represent Foxx. The SSPBA arranged to pay Lovins up to $100 an hour and cover any associated litigation expenses; if Lovins charged more than $100 an hour, Foxx was responsible for the additional attorney fees. In accordance with its policy, the SSPBA expected to be kept informed of developments in the litigation.

In March 2007, Foxx was terminated by the Town of Fletcher. Lovins assisted Foxx in pursuing administrative appeals and by filing a federal lawsuit against the Town of Fletcher and various municipal officials, including Chief Raymond. According to plaintiff, the federal lawsuit was dismissed on 3 December 2008.

In response to the federal lawsuit, Chief Raymond filed this state lawsuit against the NCPBA, the SSPBA, and John Midgette. Among other allegations, plaintiff maintains defendants committed the torts of maintenance and champerty by financially supporting the federal lawsuit. To help establish these claims, plaintiff served interrogatories[2] and requested the production of documents[3] regarding any

---

2. Plaintiff served the following interrogatories:

1. State with specificity and particularity any arrangement or agreement that either one or both of the Defendants have with Attorney Shannon Lovins or Timothy Foxx with regard to Mrs. Lovins' representation of Timothy Kirk Foxx as Plaintiff in the case of Foxx v. Fletcher and Raymond et. [sic] al. filed in the United States District Court for the Western District of North Carolina, Asheville, Division File # 1:07cv00336 including but not limited to payment of attorney's fees, expert witness fees, and court costs.

2. State whether or not either Defendant or both Defendants have paid attorney's fees and court costs to Shannon Lovins for her representation of Mr. Foxx in the above referenced lawsuit against Langdon Raymond.

3. State the amount of such fees and costs which have been paid to Mrs. Lovins to date for her representation of Mr. Foxx in the lawsuit against Langdon Raymond.

4. State the amount of expert witness fees that have been paid by either or both Defendants to expert witness Melvin Tucker in the above referenced lawsuit brought by Mr. Foxx against Mr. Raymond.

5. State the amount of court costs to include filing fees which have been paid by either or both Defendants to Mr. Foxx or Mrs. Lovins in the above referenced federal lawsuit brought by Mr. Foxx against Mr. Raymond and others.

3. Plaintiff's requests for production of documents are as follows:

1. Any documents in the possession of either Defendant reflecting a fee arrangement with attorney Shannon Lovins or Timothy Foxx for her representation of Timothy Foxx in pending litigation against Langdon Raymond.

2. Any documents in the possession of either Defendant reflecting payment of expert witness fees to Melvin Tucker for his services as expert witness in

agreements between defendants, Foxx, and Lovins dealing with representation and payment of costs.

Defendants objected and asserted the attorney-client privilege regarding any confidential communications; however, defendants stated that they were willing to submit such communications to *in camera* review in order "to disprove Plaintiff's unfounded allegation that Defendants are seeking to recover any damages award beyond its actual expenses." Concluding the "asserted attorney client privilege is overruled and has been waived by" statements[4] in defendants' Answer, the trial court ordered defendants to comply with plaintiff's requests. However, the trial court also certified its order for immediate appeal.

The Court of Appeals affirmed the trial court's discovery order on different grounds. The Court of Appeals did not address the trial court's conclusion of waiver, but rather, appeared to hold that fee arrangement information categorically "is not protected information subject to the attorney-client privilege" and that the remaining information sought in this case did not implicate the privilege. *Raymond v. N.C. Police Benevolent Ass'n*, —— N.C. App. ——, 692 S.E.2d 487, 2010 WL 1316208, at *4 (Apr. 6, 2010) (No. COA09-797) (unpublished). We allowed defendants' petition for discretionary review.

As presented to this Court, the principal legal question is whether the relationship and communications between Foxx and the SSPBA, and eventually between those two and Lovins, established an attorney-client relationship. If so, then the attorney-client

---

the federal lawsuit brought by Timothy Foxx against Langdon Raymond and others.

3. Any documents in the possession of either Defendant reflecting payment of court costs by either Defendant on behalf of Timothy Foxx in the federal lawsuit against Langdon Raymond and others.

4. Copies of all correspondence between Defendants and Shannon Lovins concerning Langdon Raymond and/or Timothy Foxx in the federal lawsuit referenced above including but not limited to any discussion of fees and costs of Timothy Foxx in the federal lawsuit against Langdon Raymond and others.

4. Paragraph 29 of defendants' Answer states:

It is admitted that Defendant SSPBA agreed to pay Officer Foxx's chosen counsel an hourly fee and costs associated with the litigation, however, Defendants do not know what other arrangements exist between Officer Foxx and his counsel. Defendants SSPBA and NCPBA agreed to pay Officer Foxx's attorney $100 an hour. Officer Foxx is responsible for all charges per hour above $100 an hour.

privilege applies to certain communications between them. *In re Investigation of Death of Miller* (*In re Miller*), 357 N.C. 316, 335, 584 S.E.2d 772, 786 (2003) (stating that the first step in determining whether the attorney-client privilege applies to a particular communication is whether "the relation of attorney and client existed at the time the communication was made" (quoting *State v. McIntosh*, 336 N.C. 517, 523-24, 444 S.E.2d 438, 442 (1994))). For these purposes, an attorney-client relationship is formed when a client communicates with an attorney in confidence seeking legal advice regarding a specific claim and with an intent to form an attorney-client relationship. *See. N.C. State Bar v. Sheffield*, 73 N.C. App. 349, 358, 326 S.E.2d 320, 325, *cert. denied*, 314 N.C. 117, 332 S.E.2d 482, *and cert. denied*, 474 U.S. 981, 106 S. Ct. 385, 88 L. Ed. 2d 338 (1985).

Traditionally, the attorney-client relationship is found between an attorney and a single client the attorney represents. *See In re Miller*, 357 N.C. at 335, 584 S.E.2d at 786. This Court, however, has also recognized a multiparty attorney-client relationship in which an attorney represents two or more clients. *Dobias v. White*, 240 N.C. 680, 684-85, 83 S.E.2d 785, 788 (1954) (indicating that an attorney-client relationship can exist between more than two individuals when "two or more persons employ the same attorney to act for them in some business transaction").

The most common scenario involving a tripartite attorney-client relationship occurs when an insurance company employs counsel to defend its insured against a claim. *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 602-03, 617 S.E.2d 40, 45-46 (2005), *aff'd per curiam*, 360 N.C. 356, 625 S.E.2d 779 (2006); N.C. St. B. Ethics Op. RPC 91, 92 (Jan. 17, 1991), *reprinted in North Carolina State Bar Lawyer's Handbook 2009*, at 200-01 (2009). In the insurance context, courts find that the attorney defending the insured and receiving payment from the insurance company represents both the insured and the insurer, providing joint representation to both clients. *Bourlon*, 172 N.C. App. at 603, 617 S.E.2d at 46 (concluding that a tripartite attorney-client relationship existed whereby an attorney provided joint representation to both the insurer and the insured). Under these circumstances, notwithstanding that usually only the insured has been sued, a tripartite attorney-client relationship exists because the interests of both the insured and the insurer in prevailing against the plaintiff's claim are closely aligned. *See id.* at 603-05, 617 S.E.2d at 46-47 (holding that a contractual duty to defend and indemnify

creates a common interest and tripartite relationship between the insurer, the insured, and the defense attorney).

The rationale for recognizing this tripartite attorney-client relationship is that individuals with a common interest in the litigation should be able to freely communicate with their attorney, and with each other, to more effectively defend or prosecute their claims. *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 387 (M.D.N.C. 2003). The tripartite attorney-client relationship has been recognized by various courts. *E.g.*, *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990) (stating that a "need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter" (quoting *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989), *cert. denied*, 502 U.S. 810, 112 S. Ct. 55, 116 L. Ed. 2d 31 (1991)) (brackets and internal quotation marks omitted)); *W. Fuels Ass'n v. Burlington N.R.R. Co.*, 102 F.R.D. 201, 203 (D. Wyo. 1984) (explaining that the joint defense attorney-client privilege "enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege" (citations omitted)); *see also Jones v. Nantahala Marble & Talc Co.*, 137 N.C. 185, 186, 137 N.C. 237, 239, 49 S.E. 94, 95 (1904) ("All communications, whether by conversation or in writing, *between the attorneys* for a party concerning the subject-matter of the litigation are privileged." (emphasis added) (citations omitted)); *Cf. Duke Energy*, 214 F.R.D. at 391 (indicating that, although the common interest doctrine did not apply in that case, the doctrine can apply in the context of a trade association or lobbying group that represents a special interest if there is specific, ongoing litigation).

Here Foxx contacted the SSPBA seeking assistance with an employment dispute. In doing so, he communicated with an attorney at the SSPBA in confidence, seeking legal advice regarding his specific situation. To assist Foxx the SSPBA contacted Lovins regarding the dispute and ultimately put Foxx in touch with Lovins. Based on these initial interactions, Foxx intended to form an attorney-client relationship with the SSPBA. Likewise, the SSPBA and Lovins, as well as Foxx and Lovins, intended to form an attorney-client relationship. As such, an attorney-client relationship existed between Foxx and the SSPBA, and eventually between those two and Lovins, such that the attorney-client privilege applies to certain communications between them.

RAYMOND v. N.C. POLICE BENEVOLENT ASS'N, INC.

[365 N.C. 94 (2011)]

Subsequent communications between Foxx, the SSPBA, and Lovins also took place in the context of an attorney-client relationship. Like the common interest found in the insurance context, the common thread in the litigation here is created by the SSPBA's interest in its members' legal well-being. The SSPBA has a goal of protecting and promoting the livelihood of its members, and it was advancing its purpose by assisting with the employment dispute at Foxx's request. Additionally, like an insurer defending its insured, the SSPBA retained oversight of the litigation. Foxx paid monthly membership dues to the SSPBA and thus had a preexisting financial relationship with, as well as an expectation of assistance from, the organization. Therefore, we hold that a tripartite attorney-client relationship exists here, and as such certain communications between them are privileged.

Recognizing an attorney-client relationship in this context is essential to the role of advocacy and benevolence associations like the SSPBA. Without such a relationship confidential statements made by individuals seeking assistance from advocacy organizations would be unprotected and discoverable in litigation. The possibility of disclosure of such communications would chill the flow of information to these groups and hinder their purpose of promoting and protecting the interests of members and individuals.

The trial court is best suited to determine, through a fact-sensitive inquiry, whether the attorney-client privilege applies to a specific communication. *In re Miller*, 357 N.C. at 336, 584 S.E.2d at 787 (noting that this Court has previously held that the "responsibility of determining whether the attorney-client privilege applies belongs to the trial court" (citing *Hughes v. Boone*, 102 N.C. 121, 138, 102 N.C. 137, 160, 9 S.E. 286, 292 (1889))). In making its decision, the trial court should utilize the five-factor *Murvin* test for determining whether the attorney-client privilege applies to a particular communication:

(1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981) (citation omitted). All confidential communications which satisfy the test are privileged and may not be disclosed. *In re Miller*, 357 N.C. at 328, 584 S.E.2d at 782 (quoting *McIntosh*, 336 N.C. at 523, 444 S.E.2d at 441).

To preserve the confidential nature of a person's statements while the privilege's applicability is assessed, we have previously suggested an *in camera* review as the proper mechanism. *In re Miller*, 357 N.C. at 337, 584 S.E.2d at 787 (recognizing "the need for *in camera* inspections in circumstances where application of the privilege is contested" (citations omitted)). Submitting potentially protected materials to the court for review does not waive the privilege. *Id.* ("[T]he material or communication asserted to be privileged retains its confidential nature notwithstanding an *in camera* review, at least through the review process.").

We note that, here, the trial court's order contains no findings of fact to indicate that it contemplated the type of tripartite attorney-client relationship which exists between the SSPBA, Lovins, and Foxx. Likewise, the order is unclear as to whether the trial court considered if Foxx consented to the purported waiver, as required under the "common interest" rule. *See Duke Energy*, 214 F.R.D. at 387 ("Once privilege is established under the rule, a waiver may not occur without consent of all parties who share the privilege." (quoting *In re Grand Jury Subpoenas*, 902 F.2d at 250)); *Bourlon*, 172 N.C. App. at 603-07, 617 S.E.2d at 46-48 (applying the rule in North Carolina). These matters should be addressed on remand.

In sum, we hold that a tripartite attorney-client relationship exists between the SSPBA, Lovins, and Foxx, such that communications between them which satisfy the five-factor *Murvin* test are privileged. On remand, the trial court should conduct an *in camera* review of the requested information, applying the *Murvin* test to determine whether the attorney-client privilege applies to the specific communications. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Superior Court, Buncombe County, for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.