IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-680

Filed: 7 June 2016

Mecklenburg County, No. 14-CVS-8495

FRIDAY INVESTMENTS, LLC, Plaintiff,

v.

BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC. f/k/a Bally Total Fitness of the Southeast, Inc. f/k/a/ Holiday Health Clubs of the Southeast, Inc. as successor-in-interest to Bally Total Fitness Corporation; and BALLY TOTAL FITNESS HOLDINGS CORPORATION, Defendants.

Appeal by Defendants from Order entered 9 April 2015 by Judge Jesse B. Caldwell III in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 November 2015.

*Knox, Brotherton, Knox & Godfrey, by Lisa Godfrey, for Defendants-Appellants.*

*Horack, Talley, Pharr & Lowndes, P.A., by Keith B. Nichols, for Plaintiff-Appellee.*

INMAN, Judge.

This appeal requires us to consider the common interest doctrine, which extends the attorney-client privilege to communications between and among multiple parties sharing a common legal interest. We hold that an indemnification provision in an asset purchase agreement, standing alone, is insufficient to create a common legal interest between a civil litigant indemnitee and a third-party indemnitor.

Bally Total Fitness of the Mid-Atlantic, Inc. ("Mid-Atlantic") and Bally Total Fitness Holding Corporation ("Holding") (collectively "Defendants") appeal the trial court's Order denying their Motion for a Protective Order on Supplementation of Written Discovery and granting Plaintiff Friday Investments, LLC's ("Plaintiff") Motion to Compel production of email and written communication between Defendants and third party Blast Fitness Group ("Blast"). Defendants contend that the trial court failed to recognize that they had entered into a tripartite attorney-client relationship with Blast, so that communications between Defendants and Blast are protected by the attorney-client privilege. After careful review, we affirm.

**Facts and Background**

In February 2000, the predecessor in interest of Mid-Atlantic entered into a lease agreement with the predecessor in interest of Plaintiff for a 25,000 square foot commercial suite in the Tower Place Festival Shopping Center in Charlotte, North Carolina. The lease was guaranteed by Holding, the parent company of both Mid-Atlantic and the original tenant. In 2012, Mid-Atlantic sold certain of its health clubs, including the Tower Place Club, to Blast. The Asset Purchase Agreement between Mid-Atlantic and Blast (the "Blast Agreement") provided that the sale transferred any "obligations . . . arising . . . under the Real Property Leases" of the clubs sold. The Blast Agreement also included an indemnification clause wherein Blast agreed to "defend, indemnify, and hold [Defendants] . . . harmless of, from[,]

and against any [l]osses incurred . . . on account of or relating to . . . any Assumed Liabilities, including those arising from or under the Real Property Leases after closing."

Plaintiff brought suit against Defendants on 9 May 2014 in Mecklenburg County Superior Court for payment of back rent and other charges under the lease. Blast subsequently agreed to defend Defendants as provided for in the Blast Agreement.

Defendants and Plaintiff completed an initial exchange of documents and answers to interrogatories on 24 October 2014. Defendants' Senior Vice President and General Counsel, Earl Acquaviva, was deposed by Plaintiff on 11 February 2015. On 19 February 2015, counsel for Plaintiff sent an email to Defendants' counsel requesting copies of "post-suit correspondence and documents exchanged between [Defendants] and Blast." Defendants refused, and on 3 March 2015, Plaintiff filed a Motion to Compel production of the requested documents. Defendants responded by filing a Motion for a Protective Order on 24 March 2015, claiming that communications between themselves and Blast were subject to attorney-client privilege. On 25 March 2015, the trial court orally ordered Defendants to produce the documents and a privilege log for *in camera* inspection.

On 27 March 2015, Defendants submitted to the trial court the requested documents and a privilege log. After completing an *in camera* review of the

documents, the trial court notified counsel via email on 2 April 2015 that it had denied Defendants' Motion for a Protective Order and granted Plaintiff's Motion to Compel. The trial court entered a written order on 13 April 2015 consistent with the court's email notice but granted a motion by Defendants to stay the decision for review by this Court.

Defendants timely appealed. The Record on Appeal was settled via stipulation, pursuant to Rule 11 of the North Carolina Rules of Appellate Procedure, on 29 May 2015. The Record was amended on Defendants' Motion on 24 July 2015 to include the trial court's 2 April 2015 email message.[1] On 1 September 2015, Defendants filed a "Motion to Submit Documents Under Seal," seeking to transmit the documents reviewed *in camera* to this Court for review.

## I.    Plaintiff's Motion to Dismiss

Plaintiff argues that a "substantial right" is not at stake because Defendants waived their right to appeal the discovery order by failing to specifically assert their attorney-client privilege during the initial round of discovery, and that Defendants' subsequent Motion for a Protective Order was insufficient to constitute an objection. We disagree.

---

[1] Defendants initially filed Notice of Appeal from the 2 April 2015 ruling communicated to counsel via email, but they also filed Notice of Appeal from the order entered 13 April 2015. Both notices are contained in the Record on Appeal. The email is not an order because it was not filed with the Clerk of Court. N.C. Gen. Stat. § 1A–1, Rule 58 (2015) ("[A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court.") Accordingly, this opinion reviews only the 13 April 2015 Order.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). While there is generally "no right of immediate appeal from interlocutory orders and judgments," *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990), immediate appeals are available under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) (2015) if the order "deprives the appellant of a substantial right which would be lost absent immediate review." *N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995).

Both this Court and the North Carolina Supreme Court have recognized that a trial court's "determination of the applicability of [attorney-client] privilege . . . affects a substantial right and is therefore immediately appealable." *In re Miller*, 357 N.C. 316, 343, 584 S.E.2d 772, 791 (2003); *see also Evans v. U.S. Auto. Ass'n*, 142 N.C. App. 18, 24, 541 S.E.2d 782, 786 (2001) (holding that the appeal of a trial court order denying the assertion of attorney client privilege after an *in camera* review affects "a substantial right which would be lost if not reviewed before the entry of final judgment").

Nevertheless, the availability of such appeals is contingent upon the proper assertion of the claimed privilege. In *K-2 Asia Ventures v. Trota*, this Court held that to assert a statutory privilege for interlocutory review, the appellant must have

complied with Rule 34(b) of the North Carolina Rules of Civil Procedure by lodging specific objections to individual discovery requests. 215 N.C. App. 443, 446–47, 717 S.E.2d 1, 4–5 (2011). Blanket objections that broadly assert a privilege without attaching it to a particular request, such as the one made by one set of defendants in *K-2 Asia Ventures*, are not only procedurally deficient but also fail to satisfy the requirement that the assertion of privilege be "not otherwise frivolous or insubstantial." *Id.* at 447, 717 S.E.2d at 4 (internal quotation marks and citations omitted).

Plaintiff attempts to draw a parallel to *K-2 Asia Ventures*, noting that Defendants asserted no particularized claim of attorney-client privilege in their responses to the initial round of discovery. We are unpersuaded. None of the initial discovery requests expressly sought correspondence between Defendants and Blast. The initial discovery request that most plainly encompasses these documents—if the documents are not privileged—is the fourth "Request for Production of Documents," which requests "[a]ll *non-privileged* correspondence or written communication of any kind between [Defendants] and any other person or entity concerning the [Tower Place Club], Lease Agreement, Guaranty, or any other issues described or referenced in the Pleadings in this action."[2] (Emphasis added.) Given the limiting language in

---

[2] Plaintiff argues that correspondence between Defendants and Blast also was within the scope of several other specific discovery requests that were not limited to non-privileged information. Request 4, which specifically seeks communications between Defendants and "any other person or

the request, it is unreasonable—for the purpose of determining waiver—to require Defendants to have first acknowledged the existence of correspondence they considered privileged and to have objected to production in response to a request for "non-privileged" information. [3]

The record reflects that when faced with a specific request for their communications with Blast, Defendants promptly asserted the attorney-client privilege. During the 11 February 2015 deposition, counsel for Plaintiff asked the deponent, Mid-Atlantic's General Counsel Earl Acquaviva, to describe "all of the conversations that you have had personally with Blast or any representatives of Blast about this lawsuit." Defendants' counsel immediately objected on the basis of attorney-client privilege and advised the deponent not to answer. Plaintiff's further attempts to probe the issue were all met with similar objections by Defendants' counsel, and the deponent refused to answer such questions.

---

entity" most plainly encompasses correspondence between Defendants and non-parties to the litigation, such as Blast. Because we affirm the trial court's ruling that the documents at issue are responsive to Request 4, analysis of the other discovery requests is unnecessary.

[3] Our holding should not be construed to encourage litigants to assert particularized objections only when a request clearly seeks privileged information or documents. The best practice for counsel responding to discovery is to give each request the broadest possible interpretation and to assert objections to producing information or documents the litigant believes to be beyond the scope of discovery allowed by the Rules of Civil Procedure. Even when privilege is claimed in good faith, the adage that it is easier to beg forgiveness than to seek permission undermines public confidence in the legal profession and our justice system. Defendants would have saved themselves, Plaintiff, the trial court, and this Court significant resources had they more broadly construed Plaintiff's requests and asserted a particularized objection in the first place.

Based on the foregoing details in the record, we hold that Defendants properly asserted the attorney-client privilege in a manner that is neither frivolous nor insubstantial and that this interlocutory appeal affects a "substantial right" of Defendants. We therefore deny Plaintiff's motion to dismiss.

## II.    Defendants' Motion to Submit Documents Under Seal

In support of their argument that the trial court failed to recognize a tripartite attorney-client relationship between themselves, Blast, and their counsel, Defendants submitted a "Motion to Submit Documents Under Seal" to this Court to examine the documents reviewed *in camera* by the trial court. We decline to grant this motion because it is improper, untimely, and unfairly prejudicial.

This Court has repeatedly held that "[i]t is the appellant's duty and responsibility to see that the record is in proper form and complete." *State v. Williamson*, 220 N.C. App. 512, 516, 727 S.E.2d 358, 361 (2012) (quoting *State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644 (1983)). Defendants failed to "request[] that the trial court review the documents *in camera* and then seal the documents for possible appellate review." *Miller v. Forsyth Mem'l Hospital* 174 N.C. App. 619, 621, 625 S.E.2d 115, 116 (2005). Defendants could have remedied this failure in the trial court prior to settling the Record on Appeal.

Even after the Record on Appeal has been settled in the trial court, but prior to the filing of the Record on Appeal, a party may move this Court to "order additional

portions of a trial court record or transcript sent up and added to the record on appeal." N.C. R. App. P. 9(b)(5)(b) (2015). Once the record has been filed, a party may still move to amend the record at any time prior to the filing of the opposing party's responsive brief. N.C. R. App. P. 9(b)(5)(a) (2015). Here, Defendants failed to ask the trial court to seal the records for appellate review, did not move this Court to order the records be sent from the trial court, and filed its unorthodox motion several days after the submission of Plaintiff's Brief.

To allow these documents to enter the record after briefing would be unfairly prejudicial to Plaintiff because such a significant amendment of the record would likely require both parties to re-brief the case to address legal issues not previously raised. For example, this Court reviews a trial court's *in camera* review of documents placed under seal *de novo*, as opposed to for abuse of discretion. *E.g., State v. Minyard*, 231 N.C. App. 605, 615, 753 S.E.2d 176, 184 (2014); *State v. McCoy*, 228 N.C. App. 488, 492, 745 S.E.2d 367, 370 (2013). Amending the appellate record to include these documents would add issues on appeal, including whether the trial court erred in its *in camera* review and whether the documents, based on this Court's *in camera* review, were subject to attorney-client privilege under the five factor *Murvin* test. *Raymond v. N.C. Police Benevolent Ass'n*, 365 N.C. 94, 100–01, 721 S.E.2d 923, 928 (2011); *State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981). Accordingly, we deny Defendants' Motion to Submit Documents Under Seal.

Because the question presented by Defendants may be addressed by reference to the nature of the relationship between the parties and the existing Record on Appeal, the Court can reach the merits of this appeal without reviewing the documents submitted to the trial court for *in camera* review.

### III.    Tripartite Attorney-Client Privilege (Common Interest Doctrine)

Defendants claim that the trial court abused its discretion by "disregard[ing] a tripartite attorney-client relationship" between Defendants, their  attorneys, and Blast and ordering the production of communications between them.  We hold that Defendants have failed to show that the trial court's ruling was either "manifestly unsupported by reason" or "arbitrary."  *See K-2 Asia Ventures*, 215 N.C. App. at 453, 717 S.E.2d at 8 (citation and quotation marks omitted).

#### A. Standard of Review

This Court reviews trial court orders relating to discovery issues for abuse of discretion.  *Id*.  To prevail, an appellant must show that the trial court's ruling was "manifestly unsupported by reason" and "so arbitrary that it could not have been the result of a reasoned decision."  *State v. T.D.R.*, 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998).

#### B. Analysis

Although attorney-client arrangements between two or more clients have been recognized by North Carolina courts for more than half a century, *Dobias v. White*,

240 N.C. 680, 684–85, 83 S.E.2d 785, 788 (1954), there is a dearth of controlling appellate precedent explaining the precise nature of these arrangements and the extension of privilege invoked in disputes with third parties.[4]  Accordingly, our discussion of the issue presented in this case is best addressed by reference to not only the limited controlling authority from our state appellate courts, but also non-binding, persuasive decisions by other courts.

Arrangements between two or more parties to obtain legal counsel for a shared legal purpose are known as "tripartite" attorney-client relationships. *Raymond*, 365 N.C. at 98–99, 721 S.E.2d at 926–27.  A tripartite relationship most commonly exists "when an insurance company employs counsel to defend its insured against a claim." *Id.* at 98, 721 S.E.2d at 926.[5]  A tripartite relationship may also exist between an individual and a "trade association or lobbying group that represents a special interest if there is specific, ongoing litigation." *Raymond*, 365 N.C. at 99, 721 S.E.2d at 927 (citations omitted).

---

[4] Our Supreme Court in *Dobias* did not address a claim of privilege by members of a tripartite relationship adverse to a third party, but rather a claim of privilege by one party seeking to bar an adverse party from discovering documents related to a business transaction in which the parties had employed joint counsel.  The Supreme Court held that "as a general rule, where two or more persons employ the same attorney to act for them in some business transaction, their communications to him are not ordinarily privileged *inter sese*."  240 N.C. at 685, 83 S.E.2d at 788.

[5] The most often cited controlling authority recognizing a tripartite relationship between insurer, insured, and counsel retained by the insurance company to represent the insured is *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 602–03, 617 S.E.2d 40, 45–46 (2005). However, like *Dobias*, *Nationwide Mut. Fire Ins. Co.* sheds little light on the issue presented here, because that appeal arose from an insurance coverage dispute between the insured and the insurer. *Id.*

The linchpin in any analysis of a tripartite attorney-client relationship is the finding of a common legal interest between the attorney, client, and third party. *See Raymond*, 365 N.C. at 100, 721 S.E.2d at 927 (tripartite attorney-client relationship existed between attorney, client, and benevolence organization due to the common interest of "protecting and promoting the livelihood" of the client). "[T]he parties must first share a common interest about a legal matter." *United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir. 1996).

North Carolina courts have yet to formulate a bright line rule or articulate criteria for determining whether a common legal interest exists to extend the attorney-client privilege between multiple parties. Instead, our courts have engaged in specific analysis of the facts in each case involving this issue. *See, e.g., Raymond*, 365 N.C. at 100, 721 S.E.2d at 927 (common legal interest based on mission of benevolent organization); *Nationwide Mut. Fire Ins.*, 172 N.C. App. at 602–03, 617 S.E.2d at 45–46 (common legal interest based on contract between insured and insurer).

All fifty states and federal courts have recognized the extension of the attorney-client privilege to certain tripartite relationships under various monikers including, *inter alia*, the "joint defense privilege," the "common interest privilege," the "common interest doctrine," and the "common defense rule." *See, e.g., Aramony*, 88 F.3d at 1392; *United States v. Schwimmer*, 892 F.2d 237, 243–46 (2d. Cir. 1989); *United*

*States v. McPartlin*, 595 F.2d 1321, 1336–37 (7th Cir. 1979); *Ferko v. NASCAR*, 219 F.R.D. 396, 401–03 (E.D Tex. 2003); Craig S. Lerner, *Conspirators' Privilege and Innocents' Refuge: A New Approach to Joint Defense Agreements*, 77 Notre Dame L. Rev. 1449, 1491 (2002). To extend the attorney-client privilege between or among them, parties must (1) share a common interest; (2) agree to exchange information for the purpose of facilitating legal representation of the parties; and (3) the information must otherwise be confidential. *Schwimmer*, 892 F.2d at 243–244. Although prudent counsel would always put a representation agreement in writing, there is no requirement that the agreement be in writing. *See McPartlin*, 595 F.2d at 1336. Despite being labeled a "privilege" by some courts, the common interest doctrine does not recognize an independent privilege, but is "an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information [to] a third party." *Ferko*, 219 F.R.D. at 401. Extension of the attorney-client privilege to these relationships "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Schwimmer*, 892 F.2d at 244. The extension of privilege applies in disputes between third parties and one or more members of the tripartite arrangement, but not in disputes *inter sese*. *Nationwide Mut. Fire Ins. Co.*, 172 N.C. App. at 602–03, 617 S.E.2d at 45–46 (2005) (insured who was represented

by counsel retained by insurance company in tort litigation by a third party against the insured was entitled, in separate litigation against the insurer, to discover communications between the insurer and counsel related to the defense strategy in underlying litigation); *Dobias*, 240 N.C. 680 at 683, 83 S.E.2d at 788 (seller and purchaser of real estate were each entitled to discover the other's communications about the deal with their common real estate attorney).

While not binding, decisions by several federal courts and the North Carolina Business Court provide some clarity as to what constitutes a common *legal* interest, distinguishing it in particular from a common *business* interest. "For the privilege to apply, the proponent must establish that the parties had some common interest about a *legal* matter." *In re Grand Jury Subpoena Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005) (emphasis added) (citations and quotation marks omitted). In that vein, the North Carolina Business Court has held that the common interest doctrine applies to "communications between separate groups of counsel representing separate clients having similar interests and actually cooperating in the pursuit of those interests." *Morris v. Scenera Research, LLC*, 2011 NCBC 33, 2011 WL 3808544, at *7 (N.C. Bus. Ct. Aug. 26, 2011). The Business Court distinguishes such legal interests from "business interest[s] that may be impacted by litigation involving one of the parties." *SCR-Tech LLC v. Evonik Energy Serv. LLC*, 2013 NCBC 42, 2013 WL 4134602, at *6 (N.C. Bus. Ct. Aug. 13, 2013) ("A party seeking to rely on the common interest

doctrine must demonstrate that the specific communications at issue were designed to facilitate a common legal interest; a business or commercial interest will not suffice.") (internal citations and quotation marks omitted); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) ("[T]he common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation.").

In *SCR-Tech*, the parties seeking protection under the common interest doctrine were linked by ownership interests as well as a cooperation agreement. 2013 WL 4134602, at *1. SCR-Tech, the proponent of the privilege, had been previously owned by Ebinger. *Id.* After selling SCR-Tech, Ebinger had come into legal conflict with defendant Evonik over the same technology, and had executed an agreement to support SCR-Tech in its claims against Evonik. *Id.* The Behusiness Court distinguished between "communications between Ebinger and SCR-Tech to coordinate positions to be taken in the separate lawsuits between them and Defendants, and . . . communications by which Ebinger provided SCR-Tech assistance in the present litigation pursuant to the Cooperation Agreement[,]" finding that the former, but not the latter, was sufficient to "rise to a level of [a] shared legal interest." *Id.* at *7.

In *Nationwide Mut. Fire Ins.*, the agreement between the insurer and the insured provided that the insurer would pay damages up to an amount specified in

the policy, would provide a defense "at [the insurer's] expense by counsel of [the insurer's] choice," and could settle the claim at any time and on any terms the insurer deemed appropriate. 172 N.C. App. at 598, 617 S.E.2d at 43. This Court held that the insurer and the insured had a shared legal interest in defending against the underlying claim, relying in part on a North Carolina State Bar Opinion recognizing that an attorney may enter into dual representation of both an insurer and an insured. *Id.* at 602–03, 617 S.E.2d at 45.

Indeed, the primary purpose of an insurance contract is defense and indemnification. By contrast, an indemnification provision in an asset purchase agreement is generally ancillary to the sale of a business, and Defendants have presented no evidence that their agreement with Blast was otherwise. The agreement and resulting arrangement is almost identical in nature to the cooperation agreement in *SCR-Tech*. While Defendants attempt to analogize to the insured-insurer agreements recognized in *Nationwide Mut. Fire Ins.*, the analogy is unpersuasive. The indemnification provision in the asset purchase agreement requires Blast to defend and indemnify Defendants from "[l]osses incurred or sustained . . . on account of or relating to . . . the use of the [a]ssets by [p]urchaser and the operation of the . . . [h]ealth [c]lubs . . . ." This language, and the nature of the asset purchase agreement, are most similar to the purchase agreement which was held to be insufficient in *SCR-Tech* to create a tripartite privileged relationship.

*SCR-Tech*, 2013 WL 4134602, at \*7. Blast is not a party to this litigation. Nor does Blast have any contractual authority to settle or otherwise affect the outcome of the suit against Defendants, unlike the insurer in *Nationwide Mut. Fire Ins.*, 172 N.C. App. at 598, 617 S.E.2d at 43.

Neither this Court nor the North Carolina Supreme Court has extended the common interest doctrine to relationships formed primarily for purposes other than indemnification or coordination in anticipated litigation. *Cf. Raymond*, 365 N.C. at 99, 721 S.E.2d at 924 (law enforcement officer communicated with counsel provided by professional association, of which he was a member, seeking legal advice regarding a specific employment dispute that resulted in litigation); *Nationwide Mut. Fire Ins.*, 172 N.C. App. at 598, 617 S.E.2d at 43 (insurer provided counsel to represent insured in litigation and maintained the right to settle the case); *SCR-Tech*, 2013 WL 4134602, at \*1 (parties each involved in separate lawsuits against defendant). Further, we are aware of no precedent indicating that federal courts within the Fourth Circuit have extended the common interest doctrine to a case "where the sharing was not done by agreement relating to some shared actual or imminent, specific litigation." *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 388 (M.D.N.C. 2003); *see also In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990) (parent company and its subsidiary had agreement to jointly prosecute contract claims against U.S. Army). Decisions from other circuits suggest this limitation as

well. *Schwimmer*, 892 F.2d at 243; *see also McPartlin*, 595 F.2d at 1337 ("The privilege protects pooling of information for any defense purpose common to the participating defendants."). Blast's status as a non-party and the absence of evidence that this litigation was material to its asset purchase agreement with Defendants distinguishes this case from decisions relied upon by Defendants for protection through the common interest doctrine.

We hold that Defendants and Blast shared a common business interest as opposed to the common legal interest necessary to support a tripartite attorney-client relationship. Consequently, we hold that the trial court did not abuse its discretion in compelling Defendants to produce the documents.

AFFIRMED.

Judges STEPHENS and HUNTER, JR. concur.