AP Atl., Inc. v. Crescent Univ. City Venture, LLC, 2017 NCBC 48.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

AP ATLANTIC, INC. d/b/a
ADOLFSON & PETERSON
CONSTRUCTION,

               Plaintiff,

v.

CRESCENT UNIVERSITY CITY
VENTURE, LLC AND THE
GUARANTEE COMPANY OF
NORTH AMERICA USA; BB & M
ARCHITECTURE, PLLC; SCA
ENGINEERS, INC.; MADISON
CONSTRUCTION GROUP, INC.;
TRUSSWAY MANUFACTURING,
INC.; and T. A. KAISER HEATING
& AIR, INC.,

               Defendants.

v.

SEARS CONTRACT, INC.; and
ARCH INSURANCE COMPANY,

               Third-Party Defendants.

MADISON CONSTRUCTION
GROUP, INC.,

               Third-Party Plaintiff,

v.

MANUEL BUILDING
CONTRACTORS, LLC,

               Third-Party Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 14745 (Master File)
16 CVS 14844 (Related Case)

**ORDER AND OPINION ON
BCR 10.9 DISCOVERY DISPUTES**

1. **THIS MATTER** is before the Court pursuant to Rule 10.9 of the General Rules of Practice and Procedure of the North Carolina Business Court ("BCR 10.9") in the above-captioned case.

> *Johnston, Allison & Hord, P.A., by Greg C. Ahlum, Robert L. Burchette, and Parker E. Moore, for Plaintiff AP Atlantic, Inc. d/b/a/ Adolfson & Peterson Construction and Defendant Adolfson & Peterson, Inc.*
>
> *Swindell & Bond PLLC, by John D. Bond, and Bradley Arant Boult Cummings LLP, by Avery A. Simmons and Douglas L. Patin, for Plaintiff/Defendant Crescent University City Venture, LLC.*

Bledsoe, Judge.

I.

INTRODUCTION

2. This consolidated action[1] arises out of multi-party litigation regarding a construction project (the "Project") for which Plaintiff AP Atlantic, Inc. ("AP Atlantic") was the general contractor, Defendant Crescent University City Venture, LLC ("Crescent") was the owner, and AP Atlantic's corporate parent, Defendant Adolfson & Peterson, Inc. ("A&P"), was the obligor on a Performance Guaranty in connection with the Project.

---

[1] On October 10, 2016, the Court consolidated (i) *Crescent University City Venture, LLC v. Adolfson & Peterson, Inc.* (No. 16 CVS 14884) and (ii) *AP Atlantic, Inc. v. Crescent University City Venture, LLC* (No. 15 CVS 14745). The Consolidation Order designated *AP Atlantic, Inc. v. Crescent University City Venture, LLC* as the lead action (the "Lead Action") and the operative case and caption for all future filings. As a party only in the *Crescent University City Venture, LLC v. Adolfson & Peterson, Inc.* case, A&P is not reflected in the caption above.

3.     Presently before the Court are two requests under BCR 10.9—one by AP Atlantic and one by Crescent—concerning discovery disputes that have arisen between AP Atlantic, A&P, and Crescent.

## II.

## PROCEDURAL AND FACTUAL BACKGROUND

4.     On May 18, 2017, AP Atlantic emailed the Court a BCR 10.9(b) request seeking an order compelling Crescent to produce its Joint Defense Agreement (the "JDA") with Summit Contracting Group, Inc. ("Summit"), a third-party contractor Crescent hired to perform repairs in connection with the Project ("AP Atlantic's 10.9 Request").

5.     The following day Crescent emailed the Court a Rule 10.9(b) request seeking an order compelling A&P to make a more complete production of documents in response to Crescent's Document Request Nos. 1, 2, 3, 4, 6, 8, 9, 10, 11, and 12 of Crescent's First Set of Interrogatories and Request for Production of Documents ("Crescent's 10.9 Request").

6.     Consistent with Rule 10.9(b), Crescent and A&P responded to each other's 10.9 Request on May 25, 2017.

7.     The Court convened an in-person conference after a previously scheduled hearing in this case to address the 10.9 Requests on May 31, 2017 (the "Conference"). AP Atlantic, A&P, and Crescent were represented by counsel at the Conference. Crescent tendered the JDA to the Court for *in camera* review at the Conference.

## III.

## ANALYSIS

### A. AP Atlantic's 10.9 Request

8. Having considered AP Atlantic's Request, Crescent's response, the arguments of counsel at the conference, and the JDA after *in camera* review, the Court concludes that the JDA is not protected by attorney-client privilege and grants AP Atlantic's request for an Order compelling Crescent to produce the JDA.

9. Under the North Carolina Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" unless otherwise limited by order of the Court. N.C. R. Civ. P. 26(b)(1). "Determination of whether a privilege applies must be by the court, not the individual claiming the privilege." *Midgett v. Crystal Dawn Corp.*, 58 N.C. App. 734, 737, 294 S.E.2d 386, 388 (1982) (quoting *Stone v. Martin*, 56 N.C. App. 473, 476, 289 S.E.2d 898, 901 (1982)). Determinations of whether a privilege applies, like other orders regarding matters of discovery, "are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." *Id.* (quoting *Hudson v. Hudson*, 34 N.C. App. 144, 145, 237 S.E.2d 479, 480 (1977)).

10. The attorney-client privilege "operates to protect confidential communications between attorneys and their clients." *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 31, 541 S.E.2d 782, 790 (2001). Because application of the privilege may result in the exclusion of relevant and material evidence, courts are

required to construe the privilege strictly and apply it consistently with its intended purpose. *Id.*

11. The party raising the privilege has the burden of establishing that: "(1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose, although litigation need not be contemplated, and (5) the client has not waived the privilege." *Id.* at 32, 541 S.E.2d at 791 (citation omitted).

12. The common interest doctrine extends the attorney-client privilege by creating "an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information [to] a third party." *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atlantic, Inc.*, 788 S.E.2d 170, 177 (N.C. Ct. App. 2016) (citation omitted). To extend the attorney-client privilege between or among the attorney, the attorney's client, and a third party, the client and third party must "(1) share a common [legal] interest; (2) agree to exchange information for the purpose of facilitating legal representation of the parties; and (3) the information must otherwise be confidential." *Id.* In such circumstances, the privilege "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.* (citation omitted).

13. The attorney-client privilege through the common interest doctrine extends to relationships between "'separate groups of counsel representing separate clients having similar interests and actually cooperating in the pursuit of those interests,'" *id.* (quoting *Morris v. Scenera Research, LLC*, 2011 NCBC LEXIS 34, at *20 (N.C. Super. Ct. Aug. 26, 2011), but only if the parties have a common interest about a legal matter—not a common business interest "that may be impacted by litigation involving one of the parties," *id.* (quoting *SCR-Tech LLC v. Evonik Energy Servs. LLC*, 2013 NCBC LEXIS 38, at *16 (N.C. Super. Ct. Aug. 13, 2013)) (holding that the defendants and a third-party "shared a common business interest as opposed to the common legal interest" where the third-party was not a party to the litigation and the litigation was not materially related to the defendants' transaction with the third-party allegedly giving rise to the common legal interest).

14. Here, Crescent has failed to meet its burden to establish that the common interest doctrine protects discovery of the JDA. Based on the Court's *in camera* review of the emails constituting the JDA, the Court concludes that the JDA is not a confidential communication between an attorney, his client, or a third-party "relat[ing] to a matter about which the attorney is being professionally consulted[,]" *Evans*, 142 N.C. App. at 32, 541 S.E.2d at 791.

15. Rather, the JDA simply reflects Crescent's agreement with Summit, prior to any demand related to this litigation ever having been made against Summit, "to exchange information for the purpose of facilitating legal representation of the parties[,]" *Friday Invs., LLC*, 788 S.E.2d at 177. The JDA does not itself convey

confidential information to facilitate the rendering of legal advice in connection with this or other specific litigation. *See, e.g.*, *In re Investigation of Death of Miller*, 357 N.C. 316, 340, 584 S.E.2d 772, 789 (2003) ("[C]ommunications between a client and an attorney [that] do not relate to a matter that affected the client at the time the statements were made, about which the attorney was professionally consulted . . . are not privileged and may be disclosed.").

16.    As such, the Court concludes that Crescent has not met its burden to establish that the JDA constitutes an attorney-client privileged communication protected by the common interest doctrine. *See Fewer v. GFI Group, Inc.*, 78 A.D.3d 412 (N.Y. App. Div. 2010) (ordering production of joint defense agreement because agreement was "not a communication from an attorney to a client made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship") (quotations and citations omitted).

17.    In addition, Crescent has not shown an existing common legal interest between Crescent, the owner of the property at issue, and Summit, the contractor Crescent hired to repair trusses at the property, sufficient to invoke the common interest doctrine. Although Crescent bases the alleged common legal interest here on "the indemnity and assumption of defense obligations" that Crescent and Summit "reasonably anticipated would fall to Crescent," Crescent has not argued that such obligations actually fell to Crescent, and it is undisputed that Summit never received a demand relating to its repairs and is not a party to this litigation.

18.   Moreover, it is clear that the primary reason Crescent retained Summit was to complete truss repairs, and the Court is mindful of the Court of Appeals' recent observation that "[n]either this Court nor the North Carolina Supreme Court has extended the common interest doctrine to relationships formed *primarily* for purposes other than indemnification or coordination in anticipated litigation." *Friday Invs., LLC*, 788 S.E.2d at 178 (emphasis added).

19.   Accordingly, the Court concludes that Summit and Crescent have not, and do not, share a common legal interest sufficient to invoke the protection of the common interest doctrine.  For each of these reasons, therefore, the Court grants AP Atlantic's 10.9 Request and will require Crescent to promptly produce the JDA.[2]

B. Crescent's 10.9 Request

20.   Crescent contends that A&P has failed to produce relevant, non-privileged documents in response to Document Request Nos. 1, 2, 3, 4, 6, 8, 9, 10, 11, and 12 of Crescent's First Set of Interrogatories and Requests for Production of Documents to A&P.  Because the parties resolved their differences concerning Request No. 11 prior to the Conference, the Court denies that Request as moot and only considers Request Nos. 1, 2, 3, 4, 6, 8, 9, 10, and 12.

(i) Request Nos. 3 and 6

21.   The documents sought by these requests are limited to those "relating to, referring to, or arising out of the Project."  A&P argues that because it has been sued in this matter only as the obligor on a Performance Guaranty, its discovery

---

[2]   Based on the representations of counsel at the hearing, it appears that Crescent has produced all of its communications with Summit relating to the Project except for the JDA and a single email between Crescent's counsel and Summit's counsel.

obligations are limited. A&P further contends that the requested documents are privileged because some may reveal the "internal workings" of A&P. Both objections are without merit.

22. First, any party or non-party, including A&P, possessing non-privileged documents relevant to this litigation may be compelled to produce those documents consistent with the North Carolina Rules of Civil Procedure. *SciGrip, Inc. v. Osae*, 2015 NCBC LEXIS 89, at *9 (N.C. Super. Ct. Sept. 28, 2015) ("North Carolina's liberal discovery rules permit parties to obtain discovery on any relevant, non-privileged matter that appears reasonably calculated to lead to the discovery of admissible evidence.") (internal citations omitted).

23. Further, the fact that the documents may reveal A&P's "internal workings" does not make them privileged. *See generally Evans*, 142 N.C. App. at 33, 541 S.E.2d at 792 (affirming order compelling production of insurance company's internal online procedure manual); *Shelton v. Morehead Mem'l Hosp.*, 76 N.C. App. 253, 257–58, 332 S.E.2d 499, 502 (1985) (holding that records, minutes, and materials of the Board of Trustees were not privileged). Although it is possible that such documents may contain information unrelated to the Project, such irrelevant information may be addressed through redaction or other appropriate means.

24. Accordingly, the Court grants Crescent's 10.9 Request as to Request Nos. 3 and 6 and will require A&P to make a full production as follows:

  a. Request No. 3 is hereby modified to read as follows:

"Please produce copies of any and all API Board of Directors minutes, reports, notes or other written documents, written and/or furnished to or by API's Board of Directors, during the period between January 1, 2012 through January 1, 2017, relating to or referring to the Project."

b. Request No. 6 is hereby modified to read as follows:

"Please produce any correspondence, Audit Reports, Annual Reports, or other documents written by and between API and any outside auditor or outside accounting firm, during the period between January 1, 2012 through January 1, 2017, relating to or referring to the Project."

(ii) Request Nos. 4 and 9

25. Requests No. 4 and 9 seek financial documents unrelated to the Project and this litigation and thus are irrelevant and not the proper subject of discovery in the current circumstances. The Court therefore denies Crescent's 10.9 Request as to these Document Requests, without prejudice to Crescent's right to renew its 10.9 Request in the event circumstances develop that establish the relevance of the requested information.

(iii)   Request Nos. 1, 2, 8, 10, and 12

26. Request Nos. 1, 2, 8, and 10 generally seek correspondence and other documents relating to the Project. Request No. 12 generally seeks documents

relating to any lawsuit or arbitration between AP Atlantic and any subcontractor relating to the Project.

27. A&P contends that it has produced all non-privileged documents in its possession that are responsive to these Requests. Crescent argues that the productions are incomplete and asks that the Court order A&P to make a complete production, confirm what has been produced and not produced, and provide a certification setting forth the process A&P followed to locate the documents that have been produced. The Court finds Crescent's request reasonable under the circumstances and will order A&P to make a complete production and provide the information set forth below.

IV.

CONCLUSION

28. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **GRANTS** AP Atlantic's 10.9 Request and **GRANTS in part** and **DENIES in part** Crescent's 10.9 Request and **ORDERS** as follows:

a. Crescent shall produce the Joint Defense Agreement with Summit no later than June 9, 2017.

b. A&P shall produce all non-privileged documents responsive to Document Request Nos. 3 and 6, as modified by this Order, no later than June 19, 2017.

c. A&P shall not be required to produce documents responsive to Crescent's Document Request Nos. 4 and 9, subject to Crescent's right

to renew its request for good cause shown based on changed circumstances.

d. A&P shall produce all non-privileged documents not previously produced that are responsive to Document Request Nos. 1, 2, 8, and 10 no later than June 19, 2017.

e. Crescent's 10.9 Request as to Document Request No. 11 is denied as moot.

f. A&P shall serve a sworn certification no later than June 19, 2017 attesting to the following with respect to A&P's search for the documents it has produced in response to Request Nos. 1, 2, 8, and 10:

    i. Describe the search method used to locate responsive documents.

    ii. Identify the database(s) searched.

    iii. Identify all search terms used.

    iv. Identify each custodian whose documents were searched.

    v. Identify the time period for the search.

g. A&P shall serve a sworn certification no later than June 19, 2017 attesting to the following with respect to A&P's response to Request No. 12:

    i. Describe the search method used to locate responsive documents.

ii. Identify and reflect on a privilege log any responsive documents not produced by reason of privilege or otherwise.

iii. Provide a brief description of and the current or final disposition of the cases listed in response to No. 12.

h. To the extent it is necessary in connection with a dispute under Rule 10.9, the Court concludes that each party's opposition to the other's 10.9 Request was substantially justified and declines to award attorneys' fees. *See* N.C. R. Civ. P. 37(a)(4).

i. The Court reminds all parties that Rule 10.9 is designed to both mandate and facilitate exhaustive efforts to reach the resolution of discovery disputes prior to Court involvement. The Court expects the parties to adhere strictly to the requirements of Rule 10.9 should any discovery disputes develop in this litigation hereafter.

**SO ORDERED**, this the 6th day of June, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases